Marvin TAYLOR, Appellant,

v.

UNITED STATES, Appellee.

Bryant K. JONES, Appellant,

v.

UNITED STATES, Appellee.

Nos. 87–188, 87–227, 87–482 and 89–1466.

District of Columbia Court of Appeals.

Argued Dec. 17, 1990.
Decided Feb. 21, 1992.

Edward D. Joseph, appointed by this court, for appellant Taylor.

Gary T. Brown, appointed by this court, for appellant Jones.

Barbara J. Valliere, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher, Elizabeth Trosman, and Mark H. Dubester, Asst. U.S. Attys., were on the brief, for appellee.

Before TERRY, STEADMAN, and WAGNER, Associate Judges.

TERRY, Associate Judge:

A grand jury charged appellants Taylor and Jones with two counts each of assault with intent to kidnap while armed,[1] assault with intent to commit robbery while armed,[2] assault with a dangerous

---

1. D.C.Code §§ 22–503, 22–3202 (1989).

2. D.C.Code §§ 22–501, 22–3202 (1989).

weapon,[3] mayhem while armed,[4] and one count each of carrying a pistol without a license.[5] Jones pleaded guilty to the charges in this indictment and agreed to testify for the government before a second grand jury. The government then dismissed the indictment · against Taylor. Jones testified before a second grand jury but did not implicate Taylor, as the government had expected him to do. The second grand jury then indicted Taylor for the same offenses charged in the first indictment. The second indictment also charged Jones with perjury [6] for his allegedly false testimony before the second grand jury. Both appellants were tried together on the second indictment and were found guilty as charged. Both noted appeals from their convictions.[7]

Taylor then filed a motion, pursuant to D.C.Code § 23–110 (1989), to vacate his sentence on the ground that his trial counsel had been ineffective. The court denied that motion without a hearing. Taylor did not appeal from that denial, but instead filed a motion for reconsideration, which the court also denied. From the latter denial Taylor noted an appeal (No. 89–1466). We affirm the convictions of both appellants (Nos. 87–188 and 87–227), dismiss No. 87–482 because it was taken from an invalid order, and dismiss No. 89–1466 for lack of jurisdiction.

3. D.C.Code § 22–502 (1989).

4. D.C.Code §§ 22–506, 22–3202 (1989).

5. D.C.Code § 22–3204 (1989).

6. D.C.Code § 22–2511 (1989).

7. After Taylor was sentenced, he filed a motion to correct his sentence on the ground that the trial court had erred in failing to consider him for sentencing under the Youth Rehabilitation Act (YRA). While that motion was pending, Taylor filed a notice of appeal (No. 87–188). Shortly thereafter the court granted the motion, vacated the original sentence, and reimposed the same sentence after deciding not to sentence Taylor under the YRA. Taylor then filed a second notice of appeal (No. 87–482).

 The trial court had no jurisdiction to vacate the original sentence after the notice of appeal from that sentence was filed. *King v. United States,* 271 A.2d 556, 558–559 (D.C.1970); *United*

## I

On June 15, 1985, Joseph Billera and his fiancee, Dolores Benninger, both from New York, came to Washington to visit an old friend, Gary Hacker, who lived in suburban Virginia. The three of them went to a restaurant in Northwest Washington for a late dinner. After leaving the restaurant at about midnight, they drove around Washington for a while in Hacker's car, looking at a few famous buildings and monuments. They then decided that on the way back to Virginia they would stop at Hains Point in East Potomac Park to see a statue known as "The Awakening," a popular tourist attraction.

They arrived at Hains Point sometime between 1:00 and 2:00 a.m. on June 16, parked the car, and started to walk toward the statue, but soon they realized that it was too far to walk.[8] As they headed back to the car, Benninger paused to look at the former presidential yacht *Sequoia,* which at that time was docked near Hains Point. Billera and Hacker meanwhile walked back directly to Hacker's car. As they stood next to it, they were shot and wounded by two men who were attempting to rob them. It is undisputed that one of the gunmen was appellant Jones.[9] The sole issue at trial was the identity of the second gunman.

*States v. Mack,* 151 U.S.App.D.C. 162, 169, 466 F.2d 333, 340, *cert. denied,* 409 U.S. 952, 93 S.Ct. 297, 34 L.Ed.2d 223 (1972). The order vacating the sentence was therefore a nullity. At most, it can be treated "as indicating a willingness to grant the motion [to correct sentence]." *King, supra,* 271 A.2d at 558–559 (footnote omitted). Because appeal No. 87–482 is taken from a judgment which the trial court lacked jurisdiction to enter, we must dismiss that appeal. We note, in any event, that there are no issues presented in No. 87–482 that are not also presented in No. 87–188.

8. Despite the late hour, Billera testified, he was not apprehensive because there was "a lot of activity" around Hains Point. He specifically recalled "somebody carrying a fishing rod, someone walking a dog."

9. The charges to which Jones pleaded guilty arose out of his involvement in the shooting and attempted robbery of Billera and Hacker.

Appellants Taylor and Jones were at the park with two other men, Gary Jones and Louis Williams, who was known by his nickname "Henry."[10] They were in appellant Jones' car, a Peugeot registered in his aunt's name. Because they needed money to go to a concert later that month, they decided to rob Billera and Hacker using two pistols that appellant Jones had in the car.

Jones and Taylor approached Billera and Hacker. As Taylor held a gun on Billera and Jones aimed the other gun at Hacker, they ordered Billera and Hacker to get into their car. Billera, who was studying his assailant's face,[11] asked Jones and Taylor what they wanted, but they simply repeated their demand that the two men get into the car. Benninger then came up and asked what was going on, whereupon Jones told her to shut up and ordered her into the car as well. Billera then pushed Taylor away, and Taylor responded by putting his gun to Billera's head.

Just then a Catholic priest, the Reverend Jerry Hargrove, having completed his nightly jog in the park, drove up to the scene in his car. As Billera moved towards Hargrove's car, Taylor shot him in the leg. At the same time Jones shot Hacker, also in the leg. Jones and Taylor then ran to the Peugeot and climbed in, and the car took off, driven by someone who was already in the front seat. Father Hargrove followed the Peugeot while calling the police on his car phone. He gave the police a description of the car, including the license number. Eventually, however, he lost sight of the car when it sped up.

Both victims spent several weeks in the hospital and three to four months thereafter in body casts; Billera, in addition, spent four more months on crutches. Each suffered some permanent disability in the injured leg.

Detective Thomas Wise of the United States Park Police, assigned to investigate the case, learned that the Peugeot was registered to Jones' aunt and that Jones had used the car on the night of June 15–16. Detective Wise interviewed Jones and then showed a photograph of Jones to the victims, each of whom identified Jones as Hacker's assailant. Wise later showed the victims and witnesses an array of photographs that included a picture of Louis Williams. None of the witnesses identified Williams as the second gunman. All four witnesses—Billera, Hacker, Benninger, and Hargrove—viewed a lineup in which both Taylor and Williams stood, and all four separately identified Taylor as the second gunman. The same four witnesses testified at trial that Taylor was the second gunman and that Williams was not.

The government introduced part of Jones' grand jury testimony to support the perjury charge against him. In that grand jury testimony, Jones stated that he, Taylor, Williams, and Gary Jones were together that night and that they drove to Hains Point, where he and Williams decided to rob Billera and Hacker. Jones told the grand jury that he and Williams were the two robbers, that he himself shot both victims, and that Taylor and Gary Jones were asleep in the back seat of the car while the attempted robbery was taking place.

Jones testified at trial consistently with his grand jury testimony, stating that Williams, not Taylor, was his accomplice. Jones said that as he and his companions fled from the scene of the crime, they drove over the South Capitol Street bridge, and he threw both guns into the river below. Taylor took the stand and said that he was asleep in the back seat when the shootings occurred.

Louis ("Henry") Williams asserted his Fifth Amendment privilege against self-incrimination and did not testify at trial. He was, however, made available for identification purposes. Benninger viewed Williams in the courtroom and testified that he was not the second gunman. Billera testified that he had observed Williams

---

10. These men are all related. Appellant Jones, Taylor, and Williams are cousins, and appellant Jones is Gary Jones' uncle.

11. Billera, a professional photographer, testified that he "was used to looking at faces" because of his profession. His description of the gunman at trial was unusually detailed.

in the waiting room, just outside the court-room, for quite some period of time and that he was "one hundred percent" sure that Williams was not Jones' accomplice. Asked whether there was any doubt in his mind about that, Billera replied, "Absolutely not."

## II

■ Taylor claims that the joinder of his trial with that of Jones was improper under Super.Ct.Crim.R. 8(b)[12] and that he is therefore entitled to a new trial. The government argues that Taylor waived his right to complain of misjoinder under Rule 8(b) because he did not raise the issue in a pretrial motion, as required by Super.Ct.Crim.R. 12(b)(2) and 47–I. The government notes that the failure to raise a timely Rule 8 objection "constitutes waiver of that objection." *Evans v. United States*, 392 A.2d 1015, 1023 (D.C.1978). Although this is technically correct, this court has held nevertheless that it will consider a claim of misjoinder under the plain error standard if the objection was not timely raised in the trial court. *Smith v. United States*, 561 A.2d 468, 472 (D.C.1989) (citing cases). We therefore review Taylor's claim of misjoinder for plain error, which means that Taylor must demonstrate error "so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial" in order to win reversal on this ground. *Watts v. United States*, 362 A.2d 706, 709 (D.C.1976) (en banc).

Rule 8(b) controls joinder in any case in which two or more defendants are charged in the same indictment. *Settles v. United States*, 522 A.2d 348, 352 (D.C.1987). Under Rule 8(b), defendants may be joined only if the charges against them "are based on the same act or transaction or series of acts or transactions."[13] *Id.* (citation omitted). When the joined defendants are charged with different offenses in the same indictment, the different offenses must constitute a "series of acts or transactions" joinable under Rule 8(b). *Id.* As we noted in *Settles*, multiple offenses

> constitute a "series of acts or transactions" joinable under Rule 8(b) only if they fall into one of three categories: (1) where the offenses are committed to achieve a "specific common end," (2) "where one offense logically leads to another," or (3) "where the offenses are part of a common scheme or plan," and are so closely connected in time and place "that there is necessarily a substantial overlap in proof of the various crimes and 'it would be difficult to separate proof of one from the other.'"

*Id.*, quoting *Davis v. United States*, 367 A.2d 1254, 1262 (D.C.1976), *cert. denied*, 434 U.S. 847, 98 S.Ct. 154, 54 L.Ed.2d 114 (1977).

In the instant case, the indictment charged Taylor with various assaults and charged Jones with perjury. Joinder was proper under Rule 8(b) only if the assault charges and the perjury charge fell into one of the three categories listed in *Settles*. Taylor argues that the offenses do not fall into any of the three categories and that joinder was therefore improper in this case.[14]

---

**12.** Jones does not argue that the charges were misjoined under Rule 8(b), but instead maintains that the trial court erred by failing to order severance *sua sponte* under Super.Ct.Crim.R.14. See Part III, *infra*. Both Taylor and Jones argue that the failure of their respective attorneys to seek severance under Rule 14 constituted ineffective assistance of counsel. See Part IV, *infra*.

**13.** Super.Ct.Crim.R. 8(b) provides in pertinent part:

> *Joinder of defendants.* Two or more defendants may be charged in the same indictment ... if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an

offense or offenses. Such defendants may be charged in one or more counts together or separately, and all of the defendants need not be charged in each count.

**14.** The government concedes that the offenses do not fall into the first category, "offenses committed to achieve a specific common end." The goal of the offenses with which Taylor was charged was to rob the victims for money to buy tickets for a concert. The goal of the offense with which Jones was charged was to mislead the grand jury as to the identity of the second gunman. We said in *Ray v. United States*, 472 A.2d 854 (D.C.1984), that the common goal of the charged offenses must be "specific" and that the offenses charged "should de-

Citing *Davis, supra,* Taylor argues that the second category, offenses logically leading to another offense, applies only to offenses which "necessarily led to or caused" subsequent offenses. In *Davis* two defendants were tried together for seven rapes committed over a period of several months. We held that the defendants were misjoined, ruling that there was "no logical development of or relationship between the offenses because no crime necessarily led to or caused the subsequent offenses." 367 A.2d at 1263. Taylor relies on this language in arguing that the second category does not apply in this case because the offenses with which he was charged did not "lead to or cause" Jones' perjury before the grand jury. Taylor argues that, although his alleged offenses were a necessary precondition for Jones' perjury, they did not themselves *cause* Jones' perjury. Thus, Taylor maintains, this case does not fall into the second *Settles* category.

We held, however, in a case decided after *Davis,* that one offense "logically leads to another" for purposes of Rule 8(b) joinder when the subsequent offense is a "sequel" to the initial offense. *Bush v. United States,* 516 A.2d 186, 192 (D.C.1986). In *Bush* two defendants were charged with robberies, and two other defendants were charged with obstruction of justice for their attempts to prevent witnesses from testifying about the robberies. This court, citing *Davis,* rejected the defendants' claims that they were misjoined in violation of Rule 8(b). We noted that while the cover-up that led to the obstruction of justice charges "was not the inevitable result of the commission of the underlying crimes, the cover-up surely was a sequel to those crimes." *Id.* In this case likewise, Jones' perjury "was not the inevitable result" of Taylor's crimes, but it "surely was a sequel to those crimes." We hold that *Bush* is controlling and that there was no error at all, let alone plain error, in the joinder of Taylor and Jones in the same indictment.[15]

### III

Even if joinder is proper under Rule 8(b), the trial court may nonetheless grant a motion to sever counts or defendants, pursuant to Super.Ct.Crim.R. 14,[16] if the joinder results in undue prejudice to a party. Jones does not contend that he and Taylor were misjoined under Rule 8(b), but instead maintains that the trial court committed plain error by failing to order a severance *sua sponte.*[17] Specifically, Jones argues that he was prejudiced in three ways by the court's failure to grant a severance, namely, (a) because his grand jury testimony was improperly admitted as evidence of other crimes, contrary to the rule of *Drew v. United States,* 118 U.S.App.D.C. 11, 331 F.2d 85 (1964), (b) because the government failed to present "separately and distinctly" evidence of the offenses with which he and Taylor were charged and thus con-

---

pend for their furtherance or success on each other." *Id.* at 858 (citation omitted). That standard is not met here.

**15.** The third category of offenses that may be properly joined under *Settles* are those that are part of a common scheme or plan, "so closely connected in time and place that there is necessarily a substantial overlap in proof ... and it would be difficult to separate proof of one from the other." *Settles, supra,* 522 A.2d at 352 (citation and internal quotation marks omitted). Given our holding that the defendants were properly joined under the second *Settles* category, we need not decide whether they were also properly joined under the third. We note, however, that at least one federal court, applying Fed.R.Crim.P. 8(b)—which is identical to the Superior Court rule involved here; *see Settles, supra,* 522 A.2d at 352 n. 6—has upheld the joinder of perjury counts against a defendant who was not charged with the substantive offenses giving rise to the perjury. *United States v. Portac, Inc.,* 869 F.2d 1288, 1294 (9th Cir. 1989), *cert. denied,* —— U.S. ——, 111 S.Ct. 129, 112 L.Ed.2d 97 (1990).

**16.** Super.Ct.Crim.R. 14 provides in pertinent part:

If it appears that a defendant ... is prejudiced by a joinder of offenses or of defendants in an indictment ... or by such joinder for trial together, the Court may ... grant a severance of defendants or provide whatever other relief justice requires.

**17.** Neither Jones' nor Taylor's trial counsel sought severance under Rule 14. We therefore review the trial court's failure to order severance *sua sponte* under the plain error standard of *Watts, supra,* 362 A.2d at 709.

fused the jury, and (c) because he and Taylor had irreconcilable defenses. All of these contentions are without merit.

### A. *Other crimes evidence*

■ Jones claims that the trial court improperly admitted his grand jury testimony under the intent exception of *Drew v. United States, supra,* 118 U.S.App.D.C. at 16, 331 F.2d at 90, because this testimony contained evidence of other crimes (the shootings in the instant case) which should not have been admitted against him.

Jones never objected, however, to the admission of this evidence at trial. On the contrary, the record shows that both appellants made a tactical decision to use Jones' grand jury testimony to bolster their trial testimony.[18] Jones took the stand and testified consistently with his grand jury testimony, admitting his involvement in the shootings. He never argued below, and does not argue here, that he was compelled to take the stand and confess to the shootings because the court admitted the grand jury testimony. There was in fact no dispute that Jones was one of the gunmen and that this fact was necessary to prove the perjury charge. Indeed, as the government points out, all of the evidence necessary to prove the substantive charges against Taylor was necessary to prove the perjury charge against Jones. The trial court gave appropriate instructions to the jury on the elements of each crime charged and told the jurors that the guilt or innocence of either defendant on any of the charges should not "control or influence" their verdict as to the other defendant. We see no *Drew* violation here, and hence no error; *a fortiori* we find no plain error.

### B. *Risk of jury confusion*

■ When a defendant is charged with multiple crimes that are similar in character, there is always a risk that the jury will confuse and cumulate the evidence against the defendant. Joint trial is nonetheless permissible under such circumstances when "the jury can easily keep such evidence separate in their deliberations...." *Cox v. United States,* 498 A.2d 231, 235 (D.C. 1985). Jones argues that the government failed to keep the evidence of his involvement in the shootings separate and distinct from the evidence of his perjury.

The "separate and distinct" requirement applies only when the crimes are similar in character, and there is a danger that the jury will use the evidence of one crime as proof of the other. In *Cox,* for example, the defendant was charged with committing two rapes. We held that we could not sustain the denial of severance on the "separate and distinct" ground because the prosecutor had "focused on the similarities between the two rapes and merged his references to the two offenses in opening statement and closing argument." *Id.* at 237 (footnote omitted). That did not happen in the instant case. For two reasons, there was no danger that the jury would find Jones guilty of perjury because of the evidence of his involvement in the shootings. First, the two crimes were not similar in character, so that the likelihood of jury confusion was virtually nil. Second, the trial court carefully instructed the jury that the guilt of either defendant on any of the charges should not influence their verdict as to the other defendant. This court has held that such an instruction will remedy any potential spillover effect. *Payne v. United States,* 516 A.2d 484, 490–491 (D.C. 1986). Thus Jones' claim that the government failed to keep the evidence of the assaults and the perjury separate and distinct cannot support his claim of plain error in the court's failure to grant a severance *sua sponte.*

### C. *Irreconcilable defenses*

■ Prejudice can arise when two defendants "present conflicting and irreconcilable defenses and there is a danger that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty...." *Rhone v. United States,* 125 U.S.App.D.C. 47, 48, 365 F.2d 980, 981 (1966). The key word here is "alone." *See, e.g., Sweet v. United States,* 438 A.2d

---

18. Taylor, for example, filed a motion *in limine* to admit Jones' grand jury testimony or, in the alternative, to sever the trials so that he could call Jones to testify.

447, 451 (D.C.1981); *Williams v. United States*, 382 A.2d 1, 8 (D.C.1978).

> [T]he problem which *Rhone* addresses does not arise from the kind of minor differences which are inevitable among codefendants' presentations, and which are generally left to the jury to sort out.... Rather, severance under *Rhone* requires a "clear and substantial contradiction between the respective defenses," causing inherent irreconcilability between them.

*Tillman v. United States*, 519 A.2d 166, 170 (D.C.1986) (citations omitted); *see Ready v. United States*, 445 A.2d 982, 987 (D.C.1982) (once irreconcilable defenses are shown, court must "find, with substantial certainty, that the conflict in defenses alone would not sway the jury to find appellant guilty"). Jones argues that the trial court committed plain error by failing to sever his case from Taylor's *sua sponte* because their defenses were conflicting and irreconcilable. The record does not support his argument.

The only issue at trial with regard to Jones was whether his accomplice was Taylor or Williams. Jones' defense was that his accomplice was Williams, not Taylor, and that he had therefore not committed perjury by telling the grand jury that his accomplice was Williams. Jones took the stand and testified that his accomplice was Williams. The government introduced his grand jury testimony, in which he also stated that Williams was his accomplice. Taylor's defense was also that Williams was Jones' accomplice, and that he himself was asleep in the back seat of the car while the shootings took place. There was simply no conflict here; on the contrary, Jones' and Taylor's defenses were essentially identical. There is thus no basis for severance under *Rhone*, and the trial court did not commit plain error in failing to order a severance *sua sponte*.

## IV

Both appellants contend that their convictions must be reversed because they were denied the effective assistance of counsel at trial. Before we address the merits of those claims, however, we must deal with a couple of jurisdictional issues.

■ One of Taylor's contentions is that the trial court erred in denying his motion under D.C.Code § 23–110 without a hearing. We cannot consider that argument, however, or any other matter relating to the § 23–110 motion because Taylor failed to file a separate notice of appeal from its denial. We held in *In re E.G.C.*, 373 A.2d 903 (D.C.1977), that the failure to file a separate notice of appeal from the denial of a similar post-trial motion "precludes us from reaching the ineffective assistance issue." *Id.* at 905 (footnote omitted). We also concluded that the bar was jurisdictional. *See id.* at 906. "We emphasize that unless a party appeals from the denial of such a motion, the only issues properly before this court are those the party raises on the basis of the record of trial." *Hall v. United States*, 559 A.2d 1321, 1322 (D.C. 1989); *see also Shepard v. United States*, 533 A.2d 1278, 1280 (D.C.1987) (when motion to vacate is filed during pendency of direct appeal, appeal is "routinely" stayed "so that, if the § 23–110 motion is denied, *the appeal from its denial* can be consolidated with the direct appeal" (emphasis added)). We therefore lack jurisdiction to consider any claims of error relating to Taylor's § 23–110 motion.

■ We must also dismiss, for lack of jurisdiction, Taylor's appeal (No. 89–1466) from the denial of his motion to reconsider the denial of the § 23–110 motion. The denial of a motion to reconsider is not an appealable order. *In re Alexander*, 428 A.2d 812 (D.C.1981), *cert. denied*, 454 U.S. 1149, 102 S.Ct. 1014, 71 L.Ed.2d 303 (1982); *United States v. Jones*, 423 A.2d 193 (D.C. 1980); *901 Corp. v. A. Sandler Co.*, 254 A.2d 411 (D.C.1969). Moreover, in the absence of specific authority (which does not exist here [19]), a motion for reconsideration

---

**19.** D.C.App.R. 4(b)(2) provides that in a criminal case the time for filing a notice of appeal from a judgment of conviction is tolled by the timely filing of a motion in arrest of judgment or a motion for new trial, and begins to run again from the entry of an order denying such a

does not toll the time for noting an appeal. *Beale v. United States,* 465 A.2d 796, 798 n. 1 (D.C.1983); *In re Alexander, supra,* 428 A.2d at 814 n. 2, citing *901 Corp. v. A. Sandler Co., supra,* 254 A.2d at 412. Thus we cannot construe the appeal in No. 89–1466 as having been taken from the denial of the § 23–110 motion, for the notice of appeal was filed almost seven months after that denial.[20]

The upshot of this discussion is that, in evaluating both Jones' and Taylor's claims of ineffective assistance of counsel, we are limited in our review to the trial record. *Hall v. United States, supra,* 559 A.2d at 1322. Jones never filed a § 23–110 motion, and the denial of Taylor's § 23–110 motion is not properly before us.

Having disposed of these jurisdictional matters, we turn to the merits of appellants' claims.

The Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), established a two-part test for assessing claims of ineffective assistance:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.

*Id.* at 687, 104 S.Ct. at 2064. The court went on to define what it meant by prejudice:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694, 104 S.Ct. at 2068. Finally, the defendant must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance...." *Id.* at 689, 104 S.Ct. at 2065. We adopted the *Strickland* test in *White v. United States,* 484 A.2d 553, 558 (D.C.1984), and thus we must apply that test to appellants' claims of ineffective assistance.

### A. Taylor

Taylor argues that his trial counsel's performance was deficient in that he (1) failed to seek severance from Jones, both under Rule 8(b) and under Rule 14, (2) failed to cross-examine Father Hargrove effectively, (3) failed to call Henry Williams as a witness, and (4) failed to make a hearsay objection to the prosecutor's cross-examination of Jones. There is no substance to any of these claims.

#### 1. Failure to seek severance

 As we have already discussed in Part II, *supra,* Taylor's trial was not misjoined with that of Jones. Since there was no misjoinder, counsel's failure to seek severance under Rule 8 could not have constituted ineffective assistance. It is settled law in the District of Columbia that an attorney's failure to file a particular motion will not be regarded as ineffective assistance unless such a motion, if filed, would in all likelihood have been granted. *See Jefferson v. United States,* 474 A.2d 147, 150 (D.C.1984); *Harried v. United States,* 128 U.S.App.D.C. 330, 335, 389 F.2d 281, 286 (1967). Nor is there any basis in the record for concluding that Taylor's counsel should have sought severance under Rule 14; on the contrary, Taylor's only real hope was to keep Jones in the case and to rely on his testimony, either as a co-defendant or as a witness (see note 18, *supra* ), to the effect that Taylor was not involved in any of the crimes with which he was charged. This

---

motion. Neither that rule nor any other, however, contains such a provision tolling or extending the time for noting an appeal from the denial of a § 23–110 motion.

**20.** The § 23–110 motion was denied in an order filed May 22, 1989, but the notice of appeal in No. 89–1466 was not filed until December 13, 1989. D.C.App.R. 4(b)(1) provides that a notice of appeal in a criminal case must be filed "within thirty days after entry of the judgment or order from which the appeal is taken unless a different time is specified by [statute]."

decision cannot be said to have been unreasonable in light of the otherwise overwhelming evidence against Taylor. We hold that Taylor has failed to overcome the presumption that his counsel's failure to seek severance was "sound trial strategy." *Hill v. United States*, 489 A.2d 1078, 1081 (D.C.1985), *cert. denied*, 476 U.S. 1119, 106 S.Ct. 1980, 90 L.Ed.2d 663 (1986).

### 2. *Father Hargrove's testimony*

█ During his cross-examination of Father Hargrove, Jones' counsel asked whether Hargrove had heard anything from the police or the prosecutor about Williams' role in the crime. The answer, which was given in writing at the bench (out of the hearing of the jury) and is reproduced in the record, was that Hargrove knew Williams was cooperating with the police. The trial court ruled that the answer was inadmissible because it did not go to the issue of Williams' identity as the second gunman.

Taylor now contends that his counsel was ineffective for failing to point out that Hargrove's answer showed he had information that Williams was not the other gunman. But that was not what Hargrove's answer showed. Although Hargrove was aware that Williams was cooperating with the government, there was nothing in his answer to indicate an awareness that Williams either was or was not the second gunman. The answer was therefore irrelevant, and Taylor's counsel was not ineffective for failing to pursue it.

### 3. *Failure to call Williams as a witness*

█ Taylor next asserts that his trial counsel should have called Williams as a witness. The trial court ruled, however, that Williams could assert his Fifth Amendment privilege against self-incrimination. Before ruling, the court conferred with Williams' counsel in chambers, out of the presence of the prosecutor and both defense counsel.[21] Williams' counsel told the court that his client had informed him that his involvement in the crimes was different from what he had told the grand jury. The court then declined to ask any other questions, holding that to do so would violate Williams' attorney-client privilege, and then ruled that Williams could assert a blanket Fifth Amendment privilege.

It is for the trial court to determine whether a witness may assert a Fifth Amendment privilege, after conducting an inquiry out of the hearing of the jury to determine whether the witness has reasonable grounds to apprehend prosecution. *Reese v. United States*, 467 A.2d 152, 156–157 (D.C.1983). The court in this case did just that and concluded that Williams could be prosecuted for certain crimes. Because this decision was legally unassailable, *id.* at 157, Taylor's attorney was not ineffective for failing to challenge it.

Taylor also argues that his counsel should have asked the court to grant Williams use immunity in order to compel him to testify. The Supreme Court, however, has categorically declared, "No court has authority to immunize a witness." *Pillsbury Co. v. Conboy*, 459 U.S. 248, 261, 103 S.Ct. 608, 616, 74 L.Ed.2d 430 (1983). Binding precedent in the District of Columbia is to the same effect. *See Devore v. United States*, 530 A.2d 1173, 1174 n. 1 (D.C.1987); *In re J.W.Y.*, 363 A.2d 674, 684 (D.C.1976); *Morrison v. United States*, 124 U.S.App.D.C. 330, 333, 365 F.2d 521, 524 (1966); *Earl v. United States*, 124 U.S.App.D.C. 77, 80, 361 F.2d 531, 534, *rehearing denied*, 124 U.S.App.D.C. 273, 364 F.2d 666 (1966), *cert. denied*, 388 U.S. 921, 87 S.Ct. 2121, 18 L.Ed.2d 1370 (1967); *accord, United States v. Lugg*, 282 U.S.App.D.C. 85, 88, 892 F.2d 101, 104 (1989) (noting the existence of a "universal rule" that only the executive branch has the power to grant immunity from prosecution). Counsel's failure to ask the court to do what it had no power to do cannot be regarded as ineffective assistance.

### 4. *Failure to object to hearsay testimony*

█ Taylor contends that his trial counsel was ineffective because he did not ob-

---

**21.** The transcript of the chambers conference is in the record. The trial court originally placed it under seal, but after the jury found appellants guilty, the seal was lifted.

ject to hearsay testimony elicited by the prosecutor on cross-examination of Jones. The testimony at issue was as follows:

Q. Did Marvin [Taylor] accuse him [Williams] of snitching?

A. I don't know if Marvin accused him of snitching or not.... They both talked to the police.

Q. Didn't Marvin say, well, man, you are snitching?

A. Who did he say that to?

Q. To Henry [Williams].

A. Not that I know of.

Q. Didn't Marvin accuse Henry of snitching on you?

A. He could—he said they had been arguing many times between them because they had been fussing over what Henry was doing. I can't clearly remember exactly what all Marvin said, but many times they be arguing, saying they were telling this and that.

This was not hearsay because, although it was an out-of-court statement—Taylor's accusation of Henry as a "snitch"—it was not offered for the truth of the matter asserted, namely, that Henry was in fact a snitch. It was offered to show that Taylor had made the accusation, not that the accusation was true. It was therefore not hearsay. *See, e.g., Tennessee v. Street,* 471 U.S. 409, 413, 105 S.Ct. 2078, 2081, 85 L.Ed.2d 425 (1985) (out-of-court statement offered to prove something other than facts asserted in statement is not hearsay); E. CLEARY, McCORMICK ON EVIDENCE § 249, at 733 (3d ed. 1984); 31A C.J.S. *Evidence* § 193 (1964). Hence Taylor's counsel was not ineffective for failing to object to this testimony on hearsay grounds.

We conclude that Taylor has failed to show that his counsel was ineffective in any respect.

### B. *Jones*

Jones maintains that his trial counsel was ineffective for failing to seek severance of his trial from that of Taylor, and for failing to object to the introduction of his grand jury testimony against him. Neither argument has merit.

### 1. *Failure to seek severance*

We concluded in part III of this opinion that the trial court did not commit plain error in failing to sever Jones' case *sua sponte* from Taylor's. This court has held that when there is no plain error in the trial court's failure to grant a severance, the failure of defense counsel to seek severance cannot be regarded as ineffectiveness under *Strickland v. Washington, supra. Watson v. United States,* 508 A.2d 75, 89 (D.C.1986), *vacated on grant of rehearing en banc,* 514 A.2d 800 (1986), *aff'd on rehearing en banc,* 536 A.2d 1056 (1987), *cert. denied,* 486 U.S. 1010, 108 S.Ct. 1740, 100 L.Ed.2d 203 (1988). This is so because "there is no reasonable probability that absent counsel's (assumed) failure the result of the proceeding would have been different." *Id.* (citations omitted).

Furthermore, as the government points out, all of the evidence admissible against Taylor would have been admissible against Jones even if he had been tried separately. A criminal defendant is not substantially harmed by his counsel's failure to seek severance when all or a substantial part of the evidence introduced at a joint trial would be admissible against him in a separate trial. *Carpenter v. United States,* 475 A.2d 369, 375 (D.C.1984). In the instant case, had Jones been tried separately, the government still would have presented evidence of Taylor's involvement in the assaults because that evidence was necessary to prove that Jones had committed perjury in testifying that Taylor was not involved in the assaults. Jones therefore suffered no prejudice as a result of his counsel's failure to seek a severance, and his claim of ineffective assistance of counsel does not meet the second part of the *Strickland* test.

### 2. *Failure to object to the grand jury testimony*

Jones argues that his trial counsel should have objected to the introduction of his grand jury testimony other than that quoted in the indictment because it "graphically [recounted] the entire episode," and hence went "far beyond the scope" of the

perjury charge. This claim is essentially frivolous. There was little or nothing in Jones' grand jury testimony about the shootings that the jury did not hear from other sources, including Jones himself when he took the stand. The grand jury testimony was properly admitted, as we have held in part III–A of this opinion, where we noted that the evidence which proved the substantive charges against Taylor was also necessary to prove the perjury charge against Jones. We see no legal basis for objecting to the grand jury testimony, and hence no reason to conclude that counsel was ineffective for failing to object to it.

## V

To sum up, we hold that the charges against both appellants were properly joined, and that neither appellant suffered undue prejudice from the joinder. Their claims of ineffective assistance of counsel based on their respective counsel's failure to seek severance must therefore fail. Their other claims of ineffective assistance are without merit. The judgments of conviction (Nos. 87–188 and 87–227) are accordingly affirmed. Appeal No. 87–482 is dismissed because it was taken from an order which the trial court had no power to enter (see note 7, *supra*), and appeal No. 89–1466 is dismissed for lack of jurisdiction.

*Affirmed in part, dismissed in part.*