UNITED STATES, Appellant,

v.

Adrian STEPHENSON, Appellee.

No. 05–CO–646.

District of Columbia Court of Appeals.

Argued Jan. 18, 2006.

Decided Feb. 9, 2006.

Suzanne C. Nyland, Assistant United States Attorney, with whom Kenneth L. Wainstein, United States Attorney, and Roy W. McLeese III, Elizabeth Trosman, and Alexandra F. Foster, Assistant United States Attorneys, were on the brief, for appellant.

Marvin Clemons, for appellee.

Before SCHWELB and FARRELL, Associate Judges, and BELSON, Senior Judge.

SCHWELB, Associate Judge:

On January 11, 2005, a grand jury indicted Adrian Stephenson for carrying a pistol without a license (CPWOL) and two related weapons offenses. On May 9, 2005, Stephenson's attorney moved the court, pursuant to Super. Ct.Crim. R. 48(b), to dismiss the indictment for lack of prosecution. The motion was based on the ground that the government had failed to secure the presence of Stephenson, who had been incarcerated in Prince George's County, Maryland, for several months, by

means of a writ of habeas corpus *ad prose-quendum.* The trial judge stated that defense counsel's "point is one well-taken" and added that "I'm going to dismiss this matter with prejudice." The prosecutor reacted by stating that she "unders[tood] dismissing without prejudice," but she argued that dismissal with prejudice was unwarranted. The judge then opined that "the government [has] interfered with the defendant's right to a speedy trial," and he reiterated that the case was dismissed with prejudice. On May 17, 2005, the government filed a motion for reconsideration, but on June 8, no ruling on the motion having been made, the government filed a notice of appeal from the order of dismissal.

▮ Although no party has raised the question whether the order of May 9, 2005, was an appealable final order in spite of the pendency of the government's motion for reconsideration, we address that issue, as we must,[1] *sua sponte,* and we conclude that this court has jurisdiction over the appeal. On the merits, dismissal of an indictment with prejudice for want of prosecution is authorized only where the defendant has been deprived of his constitutional right to a speedy trial. *United States v. Mack,* 298 A.2d 509, 510 (D.C.1972) (citations omitted). In this case, the judge apparently[2] dismissed the indictment for lack of a speedy trial without Stephenson's

counsel having asked for such relief, and without any attempt to consider or apply the "sensitive balancing process" mandated by the Supreme Court in *Barker v. Wingo,* 407 U.S. 514, 533, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), and by this court in *Graves v. United States,* 490 A.2d 1086, 1090–91 (D.C.1984) (en banc), *cert. denied,* 474 U.S. 1064, 106 S.Ct. 814, 88 L.Ed.2d 788 (1986). We conclude that dismissal with prejudice was unwarranted on the record before the judge. Accordingly, we reverse the judgment and remand the case to the trial court for further proceedings consistent with this opinion.

## I.

▮ Before reaching the substantive issues before us, we briefly address the question of subject matter jurisdiction. Generally, with exceptions not here applicable, this court has jurisdiction only of "final orders and judgments of the Superior Court of the District of Columbia." D.C.Code § 11–721(a)(1) (2001). This is true in criminal cases, *Anderson v. United States,* 754 A.2d 920, 922 (D.C.2000), as well as in civil suits. *West v. Morris,* 711 A.2d 1269, 1271 (D.C.1998). "To be final under § 11–721(a)(1), an order must dispose of the whole case on its merits, so that the court has nothing remaining to do but to execute the judgment or decree already rendered." *Anderson,* 754 A.2d at

---

**1.** Notwithstanding the failure of counsel to raise the issue of subject matter jurisdiction, we are obliged to address it, *sua sponte, In re D.M.,* 771 A.2d 360, 364 (D.C.2001), because [w]ithout jurisdiction, the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.
*Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (quoting *Ex parte McCardle,* 74 U.S. (7 Wall) 506, 514, 19 L.Ed. 264 (1868)); *see also*

*In re D.M.,* 771 A.2d at 364 (quoting *Steel Co.*). This is not a case, such as *Childs v. United States,* 760 A.2d 614, 617 & n. 4 (D.C. 2000), where this court may invoke its limited authority to bypass complicated jurisdictional questions in favor of resolving an insubstantial merits issue. *See also Hawkins v. W.R. Berkley Corp.,* 889 A.2d 290, 293–94 & n. 9 (D.C.2005).

**2.** The judge stated that the government had "interfered" with Stephenson's right to a speedy trial.

922 (citations, brackets, and internal quotation marks omitted).

■ At the time the government filed its notice of appeal in this case, its motion for reconsideration was still pending. Nevertheless, the order of dismissal is appealable. "[I]n the absence of specific authority (which does not exist here), a motion for reconsideration does not toll the time for noting an appeal." *Taylor v. United States*, 603 A.2d 451, 458–59 (D.C. 1992).[3] Moreover, the denial of a motion to reconsider is not an appealable order. *Id.* at 458. More specifically, the government cannot appeal from an order denying reconsideration of an earlier order dismissing an indictment. *United States v. Jones*, 423 A.2d 193, 195 (D.C.1980).

Thus, if the government had not filed a timely notice of appeal from the trial judge's order of May 9, it would have no right to appeal at all. Such a result would be contrary to D.C.Code § 23–104(c) (2001), which expressly authorizes the government to appeal from the dismissal of an indictment. Moreover, once the notice of appeal had been filed, the trial court no longer had jurisdiction over the motion for reconsideration. *Taylor*, 603 A.2d at 453 n. 7. These authorities, taken together, compel the conclusion that, notwithstanding the pendency in the trial court of the government's motion for reconsideration, the original order of dismissal was appealable. Accordingly, we have subject matter jurisdiction over the appeal.

## II.

To enable the reader to understand the context in which the indictment was dismissed with prejudice, a brief procedural history is in order. Stephenson was arrested on October 22, 2004, and charged with CPWOL and two related weapons offenses. At the preliminary hearing on November 9, 2004, at which Stephenson was present, the prosecutor announced that "the defendant has an outstanding case in Maryland for which there's a fugitive warrant." He added that "[w]e're going to allow him to go and take care of that." Without objection by the government, the Magistrate Judge dismissed the case for want of prosecution. The Magistrate Judge explained, however, that the dismissal was pending any action of the grand jury, and was thus obviously without prejudice.

On January 11, 2005, the grand jury returned an indictment against Stephenson, and Stephenson's arraignment was subsequently scheduled for January 31, 2005. On that date, Stephenson did not appear, but his attorney advised the court that his client was being held at the Prince George's County Detention Center on a charge of robbery. A status date was set for February 18, 2005,[4] to determine if the prosecution in Maryland would proceed. At the hearing on that date, defense counsel stated that Stephenson was still detained in Prince George's County, and he requested "that the government writ him in." The prosecutor responded that "we have no problem with that, but it would take a little while." She requested "about six weeks," and without defense objection, a hearing was set for April 8, 2005.

---

3. *Cf. Turcios v. United States Servs. Indus.*, 680 A.2d 1023, 1025 (D.C.1996) (citing *Fleming v. District of Columbia*, 633 A.2d 846, 848 (D.C.1993)) (in civil cases, a timely motion to alter or amend pursuant to Super. Ct. Civ. R. 59(b) tolls the thirty-day period for filing a notice of appeal).

4. Stephenson was scheduled to appear before another Superior Court judge on February 18 on charges of possession of cocaine with intent to distribute it (PWID) and possession of drug paraphernalia (PDP).

When the parties appeared before the court on April 8, Stephenson was not in court. A new prosecutor advised the court that "I have information from people in my office that indicate that [Stephenson] was never [incarcerated] in P.G. County." It quickly became apparent that government counsel was in error. Stephenson's attorney responded that he had visited his client in the Prince George's County Detention Center both on February 17, 2005, the day before the previous hearing, and on April 6, two days before the hearing of April 8. Counsel provided the prosecutor with his client's inmate identification number. The judge set a new date for May 9, 2005, and he told the prosecutor that "we need to have you undertake any efforts necessary to get him here." The prosecutor responded, "Yes, Your Honor." Stephenson's counsel then advised the court that his client was scheduled to go to trial in the Maryland matter on May 18.

### III.

On May 9, 2005, the judge and the attorneys were present when the case was called, but once again the defendant was not. The prosecutor stated that she had spoken with her Maryland counterpart, that Stephenson was being held in Prince George's County, that his trial was scheduled for May 18th, and that the Prince George's County prosecutor "expects that it's gonna go on May 18th." Government counsel requested that the judge "issue a bench warrant to serve as a detainer and that [Stephenson] will then be brought in after the [Maryland] trial." Stephenson's attorney, however, demurred. After reviewing the history of the case, defense counsel noted that the government still had not secured Stephenson's presence, notwithstanding the directions of the court

at the previous hearing. Counsel then stated:

> I would ask the court pursuant to Rule 48(b) to dismiss the matter for lack of prosecution . . . .

Stephenson's attorney did not, however, request a dismissal with prejudice, nor did he make any mention, explicit or implicit, of his client's constitutional right to a speedy trial.

Government counsel told the court that, after the confusion regarding Stephenson's whereabouts had been cleared up, she had spoken to the prosecutor in charge of Stephenson's case in Prince Georges County. She advised the judge that

> it is my understanding that when there is a trial date and it's a set trial date, that Prince George's County will not release the defendant to be arraigned anywhere else until the trial has been completed.

The prosecutor added, however, that she did not know why Stephenson had not been "writted in" prior to April 8, 2005.

The judge, understandably frustrated by the government's apparent inaction, stated:

> [I]t's disturbing to me that as early as January 31st, certainly Pre–Trial knew where Mr. Stephenson was; notified the U.S. Attorney's Office. We have the document here.
>
> Mr. Clemons [5] has made at least two visits, if not three, to this courtroom, including today, to essentially apprise me of the same thing. He knows where his client is. He had provided the information pertaining to his client and he wanted his client writted in, which I think is—that was the appropriate course.
>
> I find it somewhat unsettling that the government, despite what I believed to

---

5. Marvin Clemons, Esq., counsel for Stephen-   son.

have been clear instructions from the court at our last hearing, the government still hasn't seen fit to even try to obtain issuance of a writ.

> In any event, Mr. Clemons' point is one well-taken. I'm going to dismiss this matter with prejudice.

The judge thus ruled, without any request by the defense, that the dismissal would be with prejudice, but he did not, at this point, mention Stephenson's constitutional right to a speedy trial. In fact, at the time of the judge's ruling, no party had said or written a single word relating to that subject.

The prosecutor responded to the judge's ruling by stating that she could "understand [a] dismissal without prejudice," but she questioned the basis for a dismissal with prejudice. The judge then reiterated and even expanded his ruling:

> Given the record in this case I would say that *the government [has] interfered with the defendant's right to a speedy trial.* Case is dismissed with prejudice.

(Emphasis added.) This appeal followed.

### IV.

■ As the foregoing recitation discloses, the judge apparently *found* that Stephenson had been denied his constitutional right to a "speedy trial"[6] notwithstanding the failure of the defendant to claim such a violation, to mention the *Barker* factors, or to describe any preju-

dice purportedly suffered by the defendant as a result of the delay in his trial. Although government counsel had ample reason to anticipate that the failure by her office even to attempt to secure Stephenson's presence would be subject to criticism from the judge, the prosecutor could have had no idea that she would be expected to deal with a constitutional issue that the defendant had not raised. Indeed, the judge first mentioned the right to a speedy trial *after* he had announced his decision and *after* the prosecutor had sought to question that decision. Although we can appreciate, to some extent,[7] the judge's frustration with the government's inability over several months to attempt to produce Stephenson in the courtroom, we do not believe that the judge could properly find a violation of the Sixth Amendment without the government having notice that such an issue was under consideration or being afforded an opportunity to make a factual record relevant to speedy trial considerations.

■ In *Barker*, the Supreme Court held that the trial court must undertake a "sensitive balancing process" to determine whether there has been a violation of the defendant's right under the Sixth Amendment to a speedy trial. 407 U.S. at 533, 92 S.Ct. 2182. The court must consider (1) the length of the delay following indictment, (2) the reasons for the delay, (3) whether the defendant asserted his right

---

6. The judge never precisely stated that Stephenson had been denied his right to a speedy trial, only that the government had "interfered with" that right.

7. We note, however, that it is unlikely that the government could have secured Stephenson's presence even if it had made greater efforts. Since the prosecutor had not objected in November 2004 to Stephenson's transfer to Maryland or to the dismissal of the Superior Court case against him, and since Stephenson had an apparently firm May 18, 2005 trial

date in Maryland on a serious felony charge, it was unlikely that the Maryland authorities would have permitted his return to the District before his trial. Although "the possibility of a refusal [to permit the prisoner to be writted in] is not the equivalent of asking and receiving a rebuff," *Smith v. Hooey,* 393 U.S. 374, 382, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969), "the law does not require the doing of a futile act." *Stack v. United States,* 519 A.2d 147, 156 (D.C.1986) (citation omitted).

to a speedy trial, and (4) the prejudice to the defendant occasioned by the delay. *Id.* at 530, 92 S.Ct. 2182. Because of the sequence of events on May 9, 2005, and the introduction of the speedy trial issue by the judge at the conclusion of the proceedings, the parties did not have the opportunity to address, or to make a record with respect to, any of the *Barker* factors. We believe that the procedure utilized by the judge had the effect of preventing the parties from bringing relevant facts to his attention, and the judge was therefore in no position to engage in the kind of informed balancing contemplated by the Supreme Court in *Barker.*

A dismissal with prejudice is a drastic measure. It has the consequence of preventing the government from prosecuting a defendant—in this case for weapons offenses—regardless of his guilt or innocence. In our view, the procedural irregularities alone—*i.e.,* the award to the defendant of extraordinary relief which he never requested and which the government had no opportunity to oppose—mandate our reversal of the dismissal of the indictment with prejudice. *See generally District of Columbia v. Cruz,* 828 A.2d 181, 182–83 (D.C.2003) (reversing abrupt and summary dismissal with prejudice where the prosecution apparently was not ready, but where counsel for the District of Columbia was not afforded the opportunity to make a record or address relevant factors). In this case, any analysis of the *Barker* calculus is necessarily flawed, because the record might well be quite different if the parties had been apprised in advance that the constitutional right to a speedy trial had become an issue, and had then prepared accordingly.

■ Nevertheless, even on the imperfect record before us, we are able to con-

clude that Stephenson was not denied his Sixth Amendment rights.

*Length of the delay.*

■ It is undisputed, and the government concedes in its brief, that "a delay of more than one year creates a prima facie, rebuttable presumption that the speedy trial right has been denied." *See, e.g., Graves,* 490 A.2d at 1091. In many cases, depending on the particular facts, longer delays have been tolerated. *See, e.g., Dickerson v. United States,* 650 A.2d 680, 684 (D.C.1994) (twenty months); *Graves,* 490 A.2d at 1090 (twenty-five months). In this case, Stephenson was indicted on January 11, 2005, and the indictment was dismissed with prejudice on May 9, just under four months later. While we do not suggest that the modest length of the delay is conclusive, it is certainly a substantial factor in the calculus, and in this case, it favors the government.

*Reasons for the delay.*

For the entire period between indictment and dismissal, Stephenson was detained in Prince George's County, Maryland, awaiting trial for a serious felony. Although the government's apparent lack of efficiency in trying to bring him into the District for trial might reasonably be faulted, it is not alleged—nor could it reasonably be—that the government deliberately caused the delay to secure some type of tactical advantage. If the prosecutors had been advised that Stephenson's constitutional right to a speedy trial was at issue, they might well have succeeded in assembling evidence tending to show that they were not at fault at all, or only slightly at fault, and that more efficacious efforts on their part would have made no difference. Even on the limited record before us, the reasons for the delay do not weigh significantly, if at all, in Stephenson's favor.

*Assertion of the right.*

At least prior to the judge's dismissal of the indictment with prejudice, Stephenson's counsel (perhaps understandably, given the brevity of the delay) did not assert his client's right to a speedy trial at all. In fact, counsel never moved to dismiss the indictment for lack of a speedy trial; the grounds upon which counsel relied, want of prosecution, warranted only dismissal *without prejudice. Mack,* 298 A.2d at 510; *Cruz,* 828 A.2d at 183. At least until April 8, 2005, Stephenson's attorney agreed without cavil to the various continuances required to enable the government to writ his client in. It is significant that Stephenson's first invocation of the right to a speedy trial came in his opposition to the government's motion for reconsideration, *after* the judge's decision had already been made.

Stephenson argues, and we agree, that the invocation of a right to a speedy trial "is not dependent on the uttering of court-ordered incantations." *Graves,* 490 A.2d at 1098. Nothing that Stephenson's attorney said at any of the hearings, however, can fairly be described as a demand for a speedy trial, even if we examine only substance and disregard form.

*Prejudice.*

The fourth of the *Barker* factors is prejudice, which is ordinarily measured

in light of the harm that the speedy trial requirements address, namely: (1) to prevent oppressive pre-trial incarceration; (2) to minimize anxiety of the defendant; and (3) to limit the possibility of impairment of the defense, the most important.

*Dickerson,* 650 A.2d at 686. Stephenson was not detained in this case, and he was already being held in another jurisdiction facing trial on more serious charges. Moreover, he received discovery from the government on January 31, 2005, which would have facilitated the preparation of his defense. Thus, he did not suffer any of the foregoing kinds of prejudice as a result of the relatively brief delay in this case. The record further demonstrates that he did not demonstrate, or seek to demonstrate, any prejudice at the time his counsel requested dismissal of the indictment (without prejudice). Moreover, in dismissing the indictment with prejudice, the trial judge made no finding that Stephenson had been prejudiced.

Stephenson argued for the first time in his opposition to the government's motion for reconsideration, and maintains on appeal, that his twenty-second birthday was on June 22, 2005, and that as a result of delay caused by the government, he is no longer eligible to be sentenced pursuant to the District of Columbia Youth Rehabilitation Act (DCYRA). *See* D.C.Code §§ 24–901 *et seq.* (2001). In this case, however, as in *United States v. Alston,* 412 A.2d 351 (D.C.1980), the defendant did not call the problem to the court's attention, and as in *Alston,* he cannot now complain that his case was not expedited on that account. *See id.* at 361–62; *See also Dickerson,* 650 A.2d at 686–87 & nn. 11 & 12. Moreover, if the court and the government had been apprised of the claim relating to Stephenson's DCYRA eligibility, the prosecutors would have had the opportunity to make a record regarding whether they were at fault in delaying the trial beyond Stephenson's twenty-second birthday and whether a trial before that date would have been feasible in any event.[8] Finally, it is worth noting that the trial judge dismissed the

---

8. Stephenson's counsel first mentioned this issue on June 6, 2005, in his opposition to the government's motion for reconsideration. At that time, Stephenson's twenty-second birthday was only sixteen days away.

indictment with prejudice before anybody had mentioned Stephenson's approaching birthday or its possible significance for sentencing purposes.[9]

## V.

For the foregoing reasons, the judgment is reversed and the case is remanded for further proceedings consistent with this opinion.[10]

*So ordered.*

9. Stephenson also asserts on appeal that delay which he attributes to the government deprived him of the opportunity for concurrent sentencing. He did not raise this issue prior to the dismissal of the indictment, and no record was made with regard to it. We were advised at oral argument, however, that the robbery charge in Maryland has been dismissed, so that the possibility of a sentence in the District concurrent with a sentence in Maryland is moot.

10. The parties have not directed their briefs or argument to the question whether the indictment should have been dismissed, or should now be dismissed, *without* prejudice, and we express no opinion as to that question.