618 A.2d 1009

**COMMONWEALTH of Pennsylvania**

v.

**Wylie E. IRWIN, Jr. and Diane Irwin, his wife, Appellants.**

Superior Court of Pennsylvania.

Argued Nov. 19, 1992.

Filed Jan. 6, 1993.

Petition for Allowance of Appeal Granted
March 23, 1993.

Dennis B. Rafferty, Latrobe, for appellants.

Robert P. Boyer, Jr., Asst. Dist. Atty., Greensburg, for Com., appellee.

Before ROWLEY, President Judge, and JOHNSON and HESTER, JJ.

ROWLEY, President Judge:

Wylie E. Irwin and Diane Irwin appeal from the order denying their petition for the return of property. On appeal, they raise one issue, namely, whether redemptive token machines are gambling devices *per se* subject to seizure by the Commonwealth. After reviewing the record and the applicable case law, we affirm the order.

Appellants are the principal owners of a business known as Greensburg Entertainment, Inc., trading as Side Show Pizza. Side Show Pizza is a family entertainment center. Along with a musical stage show and automated rides, Side Show Pizza contains an arcade which features a variety of games, including skee-ball, basketball shoot, duck pond, and video games. Many of these games award the players with tokens which can

be redeemed for prizes at a redemption center on the premises. The prizes range from candy and small toys to television sets, microwave ovens, and compact disc players.

Three types of the video games were seized by state police as gambling devices. Those games are video black jack, video poker, and "New York, New York," also known as the "penny fall game."[1] The machines seized were of the type that awarded tokens to winning players. Appellants subsequently filed a petition for the return of the machines, which the trial court denied after an evidentiary hearing. This timely appeal was then filed.

Appellants argue that the machines seized were not gambling devices because the reward element required for a finding of gambling is absent. *See Commonwealth v. Twelve Dodge City Video Poker Machines,* 517 Pa. 363, 537 A.2d 812 (1988). They contend that although the winning players received tokens which could be redeemed for prizes, the players would never gain anything beyond the amount played. Therefore, appellants argue, "a game that inevitably offers a prize of less value than the price of playing the game could not [provide] a sufficient reward to establish gambling." Appellants' Brief at 12. Rather, the prizes are merely an incentive to induce the patrons of Side Show Pizza to play the games, thereby providing appellants with a profit.

In support of their argument, appellants rely on the principle that the right to play a free game is not a reward. *See In re Wigton,* 151 Pa.Super. 337, 30 A.2d 352, 354 (1943). That reliance is misplaced. The rationale underlying that rule is not that the player has not received a reward because he did not win more than he spent. Rather, the rationale is that "[i]f the player cannot get any other consideration or reward from the play except the right to play again, his incentive for playing must be a recreational or amusement incentive only." *Id.* at 337, 30 A.2d at 354. Appellants' customers did not play for recreation or amusement only. They played for tokens which were redeemable for prizes. The fact that the prizes

---

1. The video poker games were not actually available for use by patrons of Side Show Pizza. They were located in a storage room.

were worth less than the cost of winning them does not mean that the players did not receive a reward. As the trial court aptly stated:

The tokens issued, while having little value in and of themselves, are plainly dispensed for the purpose of allowing the recipient to redeem them for something of value at the store's redemption center. The fact that the player is engaged in an activity in which he cannot 'beat the house' does not absolve the 'house' of operating a gambling system here. The amount of reward may not be as much as the player has ventured to receive it, but in the redemptive process, the game is surely converted from something solely for the purposes of amusement to an activity expressly engaged in for the purpose of obtaining ... property as the result of the exercise of chance. This is definitively gambling.

Trial Court Opinion (Mihalich, J.), 11/4/91, at 7. Although appellants' customers may not have been engaged in astute gambling, that is, they could not win more than they spent, they were nonetheless gambling on whether they would win tokens redeemable for prizes.

In further support of their argument, appellants cite cases in which our Supreme Court has held that two features, a knock down button and meter mechanism, are required before a machine will be deemed a gambling device *per se. See Twelve Dodge City Video Poker Machines, supra; Commonwealth v. Two Electronic Poker Game Machines,* 502 Pa. 186, 196–98, 465 A.2d 973, 979 (1983). Those features are not present on the machines at issue. However, those two features provide a method whereby players can accumulate free games and then erase those free games in exchange for a reward such as cash. Appellants' machines do not permit players to accumulate free games and then erase those free games in exchange for a reward. However, appellants' machines dispense tokens to winning players which can be redeemed for a reward. Appellants' customers need not accumulate free games on the machines, as they accumulate tokens dispensed by the machines. We therefore hold that a machine

52

which dispenses tokens to winning players is a gambling device even though it does not have a knock down button and meter. Because the token system serves the same purpose as the knock down button and meter, this holding is not inconsistent with the above cases.

For these reasons, we conclude that the trial court did not err in denying appellants' petition for the return of property. We therefore affirm the trial court's order.

Order affirmed.