F I L E D
United States Court of Appeals
Tenth Circuit

SEP 17 1997

PATRICK FISHER
Clerk

<u>PUBLISH</u>

### UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

    No. 95-5274

MICHAEL DEMETRIUS KNOX, also
known as Michael Asberry,

    Defendant - Appellant.

**Appeal from the United States District Court
for the Northern District of Oklahoma
(D.C. No. 95-CR-41-K)**

Art Fleak, Tulsa, Oklahoma for Defendant - Appellant.

John D. Russell, Assistant United States Attorney (Stephen C. Lewis, United
States Attorney with him on the brief), Tulsa, Oklahoma for Plaintiff - Appellee.

Before **PORFILIO**, **LUCERO** and **MURPHY**, Circuit Judges.

**LUCERO**, Circuit Judge.

    In this direct criminal appeal, we consider the admissibility of alleged

hearsay evidence. We hold that the evidence in dispute was properly admissible

as non-hearsay pursuant to Fed. R. Evid. 801(d)(1)(A).  See Keyes v. School Dist. No. 1, 521 F.2d 465, 472-73 (10th Cir. 1975) ("An appellate court will affirm the rulings of the lower court on any ground that finds support in the record, even where the lower court reached its conclusions from a different or even erroneous course of reasoning."); see also United States v. Ross, 321 F.2d 61, 69 (2d Cir. 1963) ("[W]e should hardly be warranted in reversing for the admission of evidence simply because the judge did not place his ruling on the ground that would most readily have supported it.").

## I

Michael Knox was convicted in federal district court of mail fraud and conspiracy to commit mail fraud.  The United States alleged Knox organized two fake automobile crashes in order to secure insurance payments, which were made via federal mail.  The alleged conspiracy was something of a family affair.  The first fake crash reportedly occurred on October 17, 1991.  According to the extensive property and medical claims filed by the conspirators with a number of insurance companies, a 1979 Mercury Cougar driven by Knox's sister, Kathleen Brown, had collided with a 1986 Buick Skylark that had in turn collided with a 1990 Geo Storm containing Knox; his ex-wife, Robyn Cartwright; Robyn's mother, Barnella Cartwright; and Robyn's sister Kimberly.  Several months later, Knox's remarkably accident-prone sister claimed to have driven the same 1979

Mercury into a Mercedes containing, among others, Knox's mother, Kathryn Ford; his stepfather, Ralph Bennett; another of his ex-wives, Stephanie Craven; and his uncle, Ferrell Dixon. Again, substantial claims for property and medical expenses were filed with a number of insurance companies.

At Knox's trial, several of these individuals declined the prosecutor's invitation to implicate Knox. His sister, Kathleen Brown, who had already pleaded guilty to her involvement in the scheme, testified that she could not recall that Knox had been involved. Robyn Cartwright, Knox's second wife, who had also pleaded guilty to her involvement in the scheme, testified that her memory was affected by medication and that she could not recall the defendant's involvement. Kathryn Ford, Knox's mother, admitted that she had been a part of the scheme, but stated that Knox was uninvolved. Ford's husband, Ralph Bennett, and Knox's ex-mother-in-law, Barnella Cartwright, both denied Knox's involvement.

However, three witnesses for the prosecution implicated Knox. First, Stephanie Craven, Knox's first wife, who had earlier been convicted of mail fraud and conspiracy in connection with the same insurance scheme, testified that Knox had suggested she file a false claim. The defense introduced evidence that sometime before her testimony Craven apparently shot at Knox.

Second, Kimberly Cartwright, the sister of Knox's second wife Robyn Cartwright, testified that Knox had invited her into the insurance scheme. Both Cartwright sisters had earlier been convicted of mail fraud and conspiracy. The Cartwright sisters' mother, Barnella Cartwright, testified that Knox and the sisters' father had been involved in an altercation, which had resulted in Knox shooting their father.

The final witness to indict Knox was FBI Agent Brenda Pruden, who testified that both Kathleen Brown and Robyn Cartwright had earlier implicated Knox in the scheme. Pruden testified that at an interview in 1993, some 20 months after the second of the two "crashes," Kathleen Brown indicated that Knox had asked her to procure insurance for a car she had never seen, using a vehicle identification number that he had provided. According to Pruden, Brown said Knox had given her the money to purchase two insurance policies, then recounted to her the details of an automobile accident in which she had supposedly been involved so that she might relay this information to the insurance adjusters processing her case. Citing both Fed. R. Evid. 804(b)(1) and 803(24), the district court allowed this testimony as an exception to the prohibition on admission of hearsay evidence.

Agent Pruden further testified that Brown had implicated Knox under oath at her own change of plea hearings, some eight months prior to Knox's trial.

Again, the district court admitted this evidence pursuant to Fed. R. Evid. 804(b)(1) and 803(24). At the close of Pruden's testimony about Brown's earlier statements, the prosecution offered Brown for cross-examination, but the defense declined to question her.

Pruden also testified that she interviewed Robyn Cartwright following her change of plea hearing in November, 1994. In her testimony, which the district court apparently admitted pursuant to Fed. R. Evid. 804(b)(1) and 803(24), Pruden stated Robyn Cartwright had implicated Knox at that interview. The district court also permitted the prosecution to read to the jury transcript extracts from Robyn Cartwright's change of plea hearing—again apparently pursuant to Fed. R. of Evid. 804(b)(1) and 803(24). In these extracts, Robyn Cartwright explained that Knox explicitly directed her actions in the scheme. At the close of Pruden's testimony, Robyn Cartwright retook the stand and was cross-examined by the defense.

Following his conviction, Knox was sentenced to 42 months. His sentence was calculated on the basis of an amount of loss of $133,000, and was enhanced two levels because he was a leader and organizer of jointly-undertaken criminal activity. Before us, Knox advances his grounds for relief. Knox argues Pruden's hearsay testimony concerning Brown's and Robyn Cartwright's prior statements was inadmissable; Robyn Cartwright's testimony should have been excluded on

the basis of spousal immunity; and the trial court made a number of smaller, additional errors that together constitute "fundamental unfairness" in violation of the Due Process Clause.  He also challenges the amount of loss attributable to him and asserts his sentence should not have been enhanced because of his alleged leadership role in the insurance scheme.

## II

Evidentiary decisions rest within the sound discretion of the trial court, and are therefore reviewed for abuse of discretion.  United States v. Cestnik, 36 F.3d 904, 906 (10th Cir. 1994).  Appellate review is particularly deferential where an evidentiary ruling concerns the admission of alleged hearsay evidence.  Id. at 906-07.  We consider the record as a whole in reviewing evidentiary rulings.  Id. at 907.  Knox challenges the admission of the two sets of statements made by Brown and Robyn Cartwright at their interviews with the FBI and at their change of plea hearings.

Although all this evidence was admitted under specific exceptions to the bar against hearsay, the statements made by Brown and Robyn Cartwright at their change of plea hearings are better viewed as admissible non-hearsay.[1]  Rule

---

[1]By admitting the statements under Rules 803 and 804, the district court allowed the statements to be admitted for their truth.  Because that same purpose is served when statements are admitted as non-hearsay, we may use 801(d)(1)(a) to affirm the district court's admission of the change of plea statements.  See United States v. Rosenstein, 474 F.2d 705, 711 (2d. Cir. 1973) (holding that admission of evidence improperly

(continued...)

801(d)(1)(A) provides that "[a] statement is not hearsay if . . . [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding." Fed. R. Evid. 801(d)(1)(A). Such non-hearsay statements are admissible as substantive evidence. See United States v. Orr, 864 F.2d 1505, 1509 (10th Cir. 1988).

Both Robyn Cartwright's and Brown's change of plea statements were "given under oath and subject to the penalty of perjury at a . . . hearing . . . ." Fed. R. Evid. 801(d)(1)(A). Pursuant to the rule of United States v. Bonnett, 877 F.2d 1450, 1462 (10th Cir. 1989), both were given the opportunity to explain or deny their change of plea statements prior to the introduction of these statements. See Tr. at 11 (Brown); Tr. at 232-37 (Cartwright). Moreover, both these witnesses were "subject to cross-examination" concerning the statements made at

---

[1](...continued)
characterized by district court as exception to hearsay can be affirmed by appeals court where record indicates evidence was non-hearsay admissible for its truth); United States v. Williams, 837 F.2d 1009, 1013 (11th Cir. 1988) (same); United States v. Provenzano, 620 F.2d 985, 993 (3d Cir. 1980) (appellate court may affirm admission of evidence on ground never argued in district court, so long as evidence is admissible under ground relied on by appellate court for same purpose for which it was admitted by trial court); cf. Shepard v. United States, 290 U.S. 96, 102-03 (1933) (court of appeals may not affirm admission of hearsay statements under alternative theory not considered by district court if that would have legitimated admission only for purposes other than the statements' truth).

their earlier hearings, though defendant chose not to cross examine either witness to this effect. Neither witness's purported lack of recollection meant they were not subject to cross-examination. See United States v. Owens, 484 U.S. 554, 562-63 (1988). Thus, the change of plea statements are admissible if inconsistent with Brown's and Cartwright's testimony at Knox's trial. See Fed. R. Evid. 801(d)(1)(A).[2]

A well-settled body of case law holds that where a declarant's memory loss is contrived it will be taken as inconsistent with a prior statement for purposes of applying Rule 801(d)(1)(A). See United States v. Bigham, 812 F.2d 943, 946-47 (5th Cir. 1987) (witness's "selective memory loss was more convenient than actual," and prior statements therefore admissible under 801(d)(1)(A)); United States v. DiCaro, 772 F.2d 1314, 1321-22 (7th Cir. 1985) (where witness's lack of memory is feigned, prior statements admissible under 801(d)(1)(A)); United States v. Thompson, 708 F.2d 1294, 1302 (8th Cir. 1983) (where witness is "recalcitrant" and gives "evasive answers," court may admit prior statements as inconsistent under 801(d)(1)(A)); cf. Fed. R. Evid. 801(d)(1) Advisory Committee

_____

[2]Although it is true that the determination of whether prior testimony is truly inconsistent is a matter within the discretion of the trial judge, see Bonnett, 877 F.2d at 1463, this Court has identified inconsistency sufficient for admission under Rule 801(d)(1)(A) even where the lower court apparently failed to make any ruling as to inconsistency, United States v. Smith, 776 F.2d 892, 897 (10th Cir. 1985). We therefore perceive no bar to our doing so in this case.

Note (Rule "provide[s] a party with desirable protection against the 'turncoat' witness who changes his story on the stand and deprives the party calling him of evidence essential to his case"); 3A John H. Wigmore, Evidence § 1043, at 1061 (James H. Chadbourn rev. ed. 1970) (noting with regard to application of Fed. R. Evid. 801(d)(1)(A) that "the unwilling witness often takes refuge in a failure to remember, and the astute liar is sometimes impregnable unless his flank can be exposed to an attack of this sort"); Michael H. Graham, Federal Practice & Procedure § 6582, at 183 n.9 (int. ed. 1992) (courts typically allow for admission under Rule 801(d)(1)(A) where witness's current lack of recollection is deemed contrivance). Here, the district court ruled that "it is more probable that [Robyn Cartwright's] claim of memory loss is due to her own volition and the fact that she does not want to answer these questions under oath in front of this jury." Tr. at 230. In addition, the court noted with reference to Brown's stated lack of recollection: "It appears in the manner of her testifying that some of the simple facts to which she claims to have no memory, that she is doing it purposely." Tr. at 59. The record, therefore, is sufficient for us to find both change of plea statements admissible under Rule 801(d)(1)(A).

We do not consider the admissibility of Brown's and Robyn Cartwright's statements to the FBI. In light of our conclusion as to the admissibility of their change of plea statements, the admission of the FBI statements cannot have had

"a substantial influence on the outcome or leave[] one in grave doubt as to whether [they] had such effect." United States v. Rivera, 900 F.2d 1462, 1469 (10th Cir. 1990) (en banc) (internal quotations omitted). Thus, even if the FBI statements were inadmissable hearsay, their admission was harmless.

### III

Knox charges that Cartwright's testimony should have been excluded on the basis of spousal privilege. Pursuant to principles of common law, see Fed. R. Evid. 501, we recognize two separate marital evidentiary privileges: the confidential communications privilege and the privilege against adverse spousal testimony. See United States v. Neal, 743 F.2d 1441, 1447 (10th Cir. 1984) (Logan, J., concurring). Knox apparently bases his claim on the former, which can be invoked by a defendant-spouse as to the testimony of a witness-spouse. See United States v. Crouthers, 669 F.2d 635, 642 (10th Cir. 1982).[3]

The party seeking to assert an evidentiary privilege has the burden of establishing its applicability. Motley v. Marathon Oil Co., 71 F.3d 1547, 1550 (10th Cir. 1995). In order for defendant to assert the privilege, there must have been at the time of the communication in question a marriage recognized as valid

---

[3]An appeal based on the privilege against adverse spousal testimony would assuredly fail because that privilege may only be invoked by the witness-spouse and the record contains no indication that Robyn Cartwright ever attempted to invoke the privilege. See Trammel v. United States, 445 U.S. 40, 53 (1980).

under law.  See 3 Weinstein's Federal Evidence § 505.10[1], at 505-13; 2 Stephen A. Saltzburg et al., Federal Rules of Evidence Manual 632 (1994) (privilege only protects "confidential communications made during the marriage"); 1 McCormick on Evidence § 81, at 301 (John W. Strong ed. 1992).  Because there is no federal law of marriage, see Trammel v. United States, 445 U.S. 40, 50 (1980) ("[T]he laws of marriage and domestic relations are concerns traditionally reserved to the states."), federal courts routinely apply state law to determine whether people are spouses for purposes of the privilege, see 25 Charles Alan Wright and Kenneth W. Graham, Jr., Federal Practice and Procedure § 5573, at 563 (1989).  Here, Cartwright testified that she and defendant divorced in September 1991 and have not since been formally remarried.  See Tr. at 201.  The first faked crash was supposed to have occurred on October 17, 1991.  Defendant has provided no indication that the communications between himself and Cartwright pertaining to that accident occurred prior to their divorce the previous month.

**IV**

None of Knox's remaining claims on appeal has merit.  First, there is no truth to his contention that errors made by the district court rendered the trial proceedings below so "fundamentally unfair" as to violate his rights to due process.  Not only is there scant indication of any errors made, but there is no

indication that such minor flaws as were present are shocking to the universal sense of justice. See United States v. Russell, 411 U.S. 423, 432 (1973).

Second, Knox charges that excessive pecuniary loss was attributed to him. Factual findings supporting a district court's calculation of loss under U.S.S.G. § 2F1.1 are reviewed for clear error. United States v. Burger, 964 F.2d 1065, 1075 (10th Cir. 1992). Because Knox has not shown that it was error to attribute more than a $120,000 loss to him, the seven-point adjustment for specific offense characteristics imposed under U.S.S.G. § 2F1.1(b)(1)(H) must stand. Even excluding intended losses, actual losses found by the sentencing court total in excess of $123,000. Knox's argument that he should only be held accountable for sums paid directly to him by the defrauded insurance companies ignores the sentencing guidelines' requirement that specific offense characteristics "shall be determined on the basis of, . . . in the case of a jointly undertaken criminal activity . . ., all reasonably foreseeable acts . . . of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B). Defendant provides no particularized argument as to why the facts supporting the district court's calculation of loss were erroneous, or why, under the applicable legal standard given by § 1B1.3(a)(1)(B), its final determination of loss was incorrect. We therefore affirm the seven-point increase.

Finally, Knox argues that his sentence should not have been enhanced for a leadership role. We review for clear error the district court's determination that Knox was a leader or organizer sufficient to merit a 4-level increase in his sentencing range under U.S.S.G. § 3B1.1(a). See United States v. Tovar, 27 F.3d 497, 499 (10th Cir. 1994). Based on the findings adopted by the sentencing court, it was not clearly erroneous to find that Knox played such a role. Knox's argument appears to be that the sentencing court should have credited the testimony of witnesses who implicated others as the leading figures in the insurance scheme and exculpated Knox. But even had the court done so, that would not undermine the determination that the defendant was the "organizer, leader, manager, or supervisor of one or more other participants," § 3B1.1 comment 2, nor that the criminal activity in question involved five or more participants, see § 3B1.1(a). "There can, of course, be more than one person who qualifies as a leader of a criminal association or conspiracy." § 3B1.1 comment 4. From the evidence legitimately considered at sentencing, which may include hearsay testimony containing only minimal indicia of reliability, see United States v. Lopez, 100 F.3d 113, 120 (10th Cir. 1996), the sentencing court was entirely correct in determining that Knox was an organizer or leader of criminal activity.

**AFFIRMED.**