Anthony **BELL, James L. Banks, and Thelmuris Forte, Appellants,**

v.

**UNITED STATES, Appellee.**

Nos. 99–CM–1483, 99–CM–1531 and 99–CM–1594.

District of Columbia Court of Appeals.

Submitted Oct. 4, 2001.
Decided Jan. 17, 2002.

Pleasant S. Broadnax, III, appointed by the court, was on the brief for appellant Bell. Robert O. Goff, also appointed by the court, entered an appearance for appellant Bell.

Vandy L. Jamison, Jr., Glenn Dale, MD, appointed by the court, was on the brief for appellant Banks.

James Wilson Richmond, Jr., was on the brief for appellant Forte.

Wilma A. Lewis, United States Attorney at the time the brief was filed, and John R. Fisher, Elizabeth Trosman, Steven J. Durham, and Steven B. Snyder, Assistant United States Attorneys, were on the brief for appellee.

Before TERRY and WASHINGTON, Associate Judges, and NEWMAN, Senior Judge.

TERRY, Associate Judge:

Anthony Bell, James Banks, and Thelmuris Forte appeal from convictions of first-degree fraud. Bell, Banks, and Forte, together with a fourth co-defendant, Roland Jones, were found guilty after a nine-day non-jury trial. All three appellants contend, first, that the trial court abused its discretion by admitting the prior inconsistent statement of a trial witness as substantive evidence. Second, each appellant maintains that the evidence was insufficient to sustain his conviction. Finally, Forte claims that the court erred in computing the amount of restitution that he was required to make as part of his sentence. We affirm all three convictions, but remand Forte's case for the purpose of modifying the amount of restitution he must pay.

## I

### A. *The Fraudulent Scheme*

Bell, Banks, and Forte, along with others, engaged in a scheme to use equipment and materials owned by the District of Columbia and workers employed by the District of Columbia to perform private water pipe repair work for their own profit. These "side jobs" took place at various locations in the District. Forte is a private plumber by trade; Bell and Banks were employees of the District of Columbia Water and Sewer Authority ("WASA").[1]

---

1. In these appeals we assume, without deciding, that WASA is an agency of the District of Columbia government. Whether it is a District government agency for other purposes-specifically, whether a suit against WASA must be preceded by notice to the District

WASA maintains the water mains under the District's streets and the service lines that carry water from the main lines to underground water meters, which are typically located at or just inside property lines. The pipes that run from the meters into buildings are the responsibility of the individual customers. WASA performs maintenance on the lines from the meters to the buildings only if the pipes are in such poor condition that a water meter cannot be connected to them.

In early 1996, Sylvia Robinson Green, the owner of an apartment building in Southeast Washington, contracted with Forte to have a water line connected from her building to the city water service. The agreed price was $4200, well below other bids Ms. Green had obtained from other contractors. As part of the deal, Green agreed to pay $2100 in advance. Forte, in turn, arranged to have the work done by Keith Thames, a plumber and supervisor for WASA. Thames agreed to do the work for a sum between $1400 and $1800 (at trial, his recollection of the exact amount was unclear).

Thames and other workers from WASA, including Banks and Bell, worked on the project during April 1996. The job was done during daytime hours, when the WASA employees should have been working for WASA. At the work site Bell and Banks operated a dump truck and a backhoe with "city symbols" on them. In addition, Ms. Green, the property owner, saw Forte at the work site when she visited it.

The project was never completed because a piece was missing from the plumbing, and because Forte failed to procure some of the necessary permits for the job. When Ms. Green did not pay the full amount agreed upon, Forte went to Green's home accompanied by another man in a "government truck" and demanded the money, but she did not pay him. Thereafter a man named "Keith" telephoned and asked Ms. Green for the money, but she refused to pay him because her deal was with Forte. She told Keith that if he would have Forte bring her the required permits, she would pay him the remainder of what she owed. Forte never produced the permits, and Green never made the second payment. She ultimately hired another plumber to complete the project.

In the meantime, the Metropolitan Police Department began an investigation based on a report that WASA workers were taking bribes to perform private jobs on official time. Sergeant Philip Burton and another officer went at least twice to the work site at Ms. Green's apartment building, where they saw District of Columbia employees wearing uniforms and using equipment marked with District insignia and identification numbers. In particular, the officers saw Banks, Bell, Thames, and a man in a plaid shirt all working there. Later Burton ascertained that the car in which the man in the plaid shirt drove away was registered to Thelmuris Forte.

Sergeant Burton continued his investigation by setting up an undercover operation, which involved additional side jobs at two different locations in other parts of the city. Burton saw Bell working at both of those job sites, and Banks at one of them. According to Thames' plea statement, both Banks and Bell received payment from Thames for their work on the project for

under D.C.Code § 12–309 (2001)—is an issue pending before this court en banc in another case, *Dingwall v. District of Columbia Water & Sewer Authority*, No. 99–CV–79, argued November 6, 2001. We express no view here on any of the issues presented in the *Dingwall* case.

Ms. Green, and for some of the other work as well.

### B. *The Admission of Thames' Prior Statement*

The main issue on this appeal concerns the admission of a written statement made by Keith Thames in a related proceeding in federal court. On June 19, 1998, Thames pleaded guilty in the United States District Court for the District of Columbia to one count of conspiracy to commit bribery. In a five-page, single-spaced written statement signed on that date, Thames described in detail his involvement in the side job scheme and named Bell, Banks, and Forte, among others, as persons involved in that scheme.

As part of Thames' plea agreement in the United States District Court, counsel for the government, in consultation with Thames' attorney, drafted a "Factual Statement" which both Thames and his attorney signed before the plea hearing began. Immediately above Thames' signature appeared the following paragraph:

> I have reviewed the foregoing Factual Statement and discussed it with my attorney. It accurately sets forth my and my co-defendants' conduct with regard to the matters charged in the pending indictment against us.

Then, in open court, Thames was placed under oath and stated, in a lengthy colloquy with the judge, that the information set forth in the Factual Statement was true and accurate. The prosecutor explained that he had originally drafted the statement, that both Thames and his counsel had "had an opportunity to go over it," and that they had suggested some changes which were incorporated into the statement. Thames' counsel confirmed that the document before the court was the final draft. At the conclusion of the plea proceeding, the judge offered Thames an opportunity to raise any other matters or to ask any questions, but he had no questions. At no time did Thames ever assert that the facts in the Factual Statement were incorrect or untrue. The judge then accepted Thames' plea.

In the case at bar, the government filed a motion *in limine* seeking a ruling before trial on the admissibility of the Thames statement. When none of the defendants opposed the motion, the court treated it as conceded. Later, at the beginning of the trial, Forte's counsel attempted to challenge the admission of the statement. The court refused to reopen the matter, but it did say that counsel could argue the relevance of the statement at the time it was offered into evidence. None of the other defendants made any objection at that time to the introduction of the statement.

At trial Thames was one of the government's principal witnesses, but in some respects his testimony was inconsistent with what he had said in his written statement in federal court. The government used that statement to impeach his testimony. At the end of Thames' direct testimony, the government moved the admission of both the statement and the transcript of the plea hearing in the United States District Court. Each appellant's counsel separately stated that he did not object to the admission of the statement and the transcript, and the court admitted both documents as substantive evidence.

None of the three appellants presented any evidence. Their co-defendant, Ronald Jones, called four witnesses, including himself, but their testimony did not incriminate or exculpate Bell, Banks, or Forte in any way.

At the conclusion of the trial, the court found each appellant guilty of first-degree fraud as an aider and abettor. In reaching its verdict, the court expressly relied on

Thames' written statement from the plea proceeding in federal court, and disregarded Thames' in-court testimony insofar as it was inconsistent with that written statement.

At the sentencing a few weeks later, the court ordered Forte to pay $2100 in restitution to the District of Columbia Treasury. After Forte noted an appeal from his conviction, the court filed an "amended judgment" and a separate order reducing the amount of restitution to $700.

## II

All three appellants argue that the trial court committed plain error in admitting the factual statement and plea transcript as substantive evidence under D.C.Code § 14–102(b)(1) (2001). We hold that there was not only no plain error but no error at all, because Thames' statement meets the statutory criteria for admission under section 14–102(b)(1).

Section 14–102 provides, in relevant part:

(a) The credibility of a witness may be attacked by any party, including the party calling the witness.

(b) A statement is not hearsay if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement and the statement is (1) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition.... Such prior statements are substantive evidence.

There is no dispute that Thames testified at trial and was subject to cross-examination concerning the statement; further, he made the statement at a hearing in which he was under oath and subject to the penalty for perjury. Appellants instead attempt to argue that the statement was not inconsistent with Thames' testimony at trial. Their arguments hinge on Thames' efforts to repudiate portions of his statement while testifying in this case.

To sustain their arguments, however, appellants mistakenly rely on cases interpreting the former version of D.C.Code § 14–102, which is no longer in effect.[2] The former statute required a party to give a witness an opportunity to explain a prior inconsistent statement. Repudiation of a prior statement by the witness resulted in its exclusion as hearsay. *See, e.g., Fletcher v. United States*, 524 A.2d 40, 43 (D.C.1987) (prior identification rendered inadmissible upon repudiation by witness).

■ The repudiation rule is inapplicable here because the language of the new statute and more recent case law omit any requirement that the witness be given an opportunity to explain his prior statement. *See Sparks v. United States*, 755 A.2d 394, 399 (D.C.2000). Since 1995, section 14–102 has required only (1) that the witness be confronted on the witness stand with the prior inconsistent statement, and (2) that

2. Section 14–102 was totally rewritten by an amendment which became effective on May 23, 1995. Before that date, section 14–102 was an entirely different statute, which read as follows:

When the court is satisfied that the party producing a witness has been taken by surprise by the testimony of the witness, it may allow the party to prove, for the purpose only of affecting the credibility of the witness, that the witness has made to the party or to his attorney statements substantially variant from his sworn testimony about material facts in the case. Before such proof is given, the circumstances of the supposed statement sufficient to designate the particular occasion must be mentioned to the witness, and he must be asked whether or not he made the statements and if so allowed to explain them.

D.C.Code § 14–102 (1989).

the opposing party be given an opportunity to cross-examine the witness concerning the statement. *See Mercer v. United States,* 724 A.2d 1176, 1196–1197 (D.C. 1999).

In the instant case, both of these requirements were met. Thames was on the stand when the factual statement from the plea hearing was offered into evidence; indeed, the government impeached his testimony with the statement in several instances when he attempted to back away from the facts detailed in the statement. Further, the government introduced the statement into evidence at the conclusion of Thames' direct testimony, and all of the defense attorneys had an opportunity to use it during cross-examination. We hold accordingly that the requirements of section 14–102 were met, and that Thames' prior statement was properly admitted as substantive evidence.[3]

### III

In considering appellants' several arguments that the government failed to present sufficient evidence to establish their guilt, we must view the evidence "in the light most favorable to the government, recognizing the factfinder's role in weighing the evidence, determining the credibility of witnesses, and drawing justifiable inferences from the evidence." *Ford v. United States,* 498 A.2d 1135, 1137 (D.C. 1985) (citations omitted); *see Mihas v.*

*United States,* 618 A.2d 197, 200 (D.C. 1992). The government is not required to negate every possible inference of innocence. *See, e.g., Ford,* 498 A.2d at 1137; *In re T.J.W.,* 294 A.2d 174, 176 (D.C.1972). On the contrary, appellants must establish that the government presented "no evidence upon which a reasonable mind could infer guilt beyond a reasonable doubt." *Head v. United States,* 451 A.2d 615, 622 (D.C.1982). When the case is tried without a jury, as this one was, this court will not reverse a conviction for insufficient evidence unless the appellant demonstrates that the trial court's factual findings are "plainly wrong," or "without evidence to support [them]." D.C.Code § 17–305(a) (2001).

Bell, Banks, and Forte were convicted as aiders and abettors of first-degree fraud under D.C.Code § 22–3221(a) (2001).[4] That statute provides:

> A person commits the offense of fraud in the first degree if that person engages in a scheme or systematic course of conduct with intent to defraud or to obtain property of another by means of a false or fraudulent pretense, representation, or promise and thereby obtains property of another or causes another to lose property.[5]

Aiding and abetting a criminal offense requires proof "(1) that the offense was committed by someone, (2) that the accused participated in the commission, and (3)

---

3. As the government points out, the relevant language of D.C.Code § 14–102(b)(1) is identical to that of FED.R.EVID. 801(d)(1)(A). Applying that rule, federal courts have consistently upheld the admission, as substantive evidence, of prior inconsistent statements made under oath at plea proceedings. *See, e.g., United States v. Knox,* 124 F.3d 1360, 1363–1364 (10th Cir.1997); *United States v. Matlock,* 109 F.3d 1313, 1319 (8th Cir.), *cert. denied,* 522 U.S. 872, 118 S.Ct. 188, 139 L.Ed.2d 127 (1997).

4. Formerly codified as D.C.Code § 22–3821(a) (1996).

5. First-degree fraud can be either a felony or a misdemeanor, depending on whether "the value of the property obtained or lost" as a result of the fraud is $250 or more, or less than $250. D.C.Code § 22–3222(a) (2001), formerly D.C.Code § 22–3822(a) (1996). In the instant case, appellants were charged only with misdemeanor first-degree fraud.

that he did so with guilty knowledge." *West v. United States*, 499 A.2d 860, 865 (D.C.1985) (citations omitted). Whether a defendant is guilty of aiding and abetting a crime depends on the totality of the evidence. *See Green v. United States*, 718 A.2d 1042, 1062 (D.C.1998), *cert. denied*, 526 U.S. 1011, 119 S.Ct. 1156, 143 L.Ed.2d 222 (1999).

■ In the instant case, the evidence showed that Forte offered Ms. Green, the apartment building owner, a contract price well below the market price quoted by other private plumbers to do the water pipe connection work. Thames' plea statement implicated Forte as a co-conspirator in the plan to perform that job at Ms. Green's building. Forte spent time at the work site when workers in WASA uniforms, using equipment marked with District of Columbia government insignia, were performing the job he had arranged. When the job was completed, Forte attempted to obtain the final payment from Ms. Green, accompanied by a person (to whom he referred as his "supervisor") in a truck bearing District government markings.

The evidence established, first of all, that Forte had guilty knowledge of Thames' fraudulent scheme. In his negotiations with Ms. Green, he substantially undercut the market price for the job, and his presence at the job site with uniformed employees of the District and marked District equipment permitted an inference that he knew that District employees were working on that job, rather than on their assigned duties as government employees. His guilty knowledge, his successful efforts to negotiate the job with Ms. Green, his

recruitment of District government employees to do the work, his presence at the scene, his attempt to obtain the final payment from Ms. Green, and Thames' plea statement, all taken together, were sufficient to establish Forte's guilt as an aider and abettor of the fraud.

■ Bell and Banks were implicated in the scheme through Thames' plea statement. According to that statement, both Bell and Banks agreed to work at the Southeast Washington site in return for money to be paid by Forte. In addition, Bell worked at both of the other sites in return for money from Thames, and Banks worked at one of those sites in return for money from Thames. All of the work was done during hours when Bell and Banks should have been working for the District.[6] The evidence that Banks and Bell received money outside of their normal WASA employment for work done at the three job sites during official working hours, and that they actually participated in the work at the Southeast Washington job site, was sufficient to permit a reasonable inference that they acted with guilty knowledge. The trial court committed no error in finding beyond a reasonable doubt that Bell and Banks aided and abetted Thames' fraudulent scheme.

Appellants' real complaint appears to be that the trial court based its guilty verdicts almost entirely on Thames' sworn plea statement, which was admitted as substantive evidence under D.C.Code § 14–102(b)(1), while rejecting contrary testimony from Thames on the witness stand. But the court was entitled to do exactly that. There is nothing in either the statute or relevant case law that precludes a trier

**6.** In addition to Thames' plea statement, undercover police officers saw the three men working at the Southeast Washington site and elsewhere. The trial court heavily discounted the police testimony about Bell's and Banks' presence at the job sites, assessing its probative value as less than "1 percent out of 100." Nevertheless, it corroborated the Thames plea statement in some measure.

of fact from basing a verdict, primarily or entirely, on a prior inconsistent statement made under oath and admitted under section 14–102(b)(1), and disregarding contrary live testimony from the very same person who made the statement. The court in this case could reasonably infer, as it did, that the five-page statement signed by Thames pursuant to his plea agreement was motivated by a desire to mitigate his punishment, whereas his testimony at trial may well have been motivated by a desire to help his friends get out of trouble. Hence the court could permissibly find, as it did, that the plea statement was more likely to be true than Thames' testimony in the courtroom. Because this finding was not plainly wrong, we must uphold it and the resulting guilty verdicts under D.C.Code § 17–305(a).

## IV

The trial court initially ordered Forte to pay $2100 in restitution to the District of Columbia Treasury. Later, after Forte noted his appeal, the court modified its order and directed Forte to pay only $700 in restitution.

 It is well established that a trial court loses jurisdiction to modify the sentence in a criminal case after a notice of appeal has been filed. *See, e.g., Taylor v. United States,* 603 A.2d 451, 453 n. 7 (D.C.), *cert. denied,* 506 U.S. 852, 113 S.Ct. 155, 121 L.Ed.2d 105 (1992); *Franklin v. United States,* 293 A.2d 278, 279 (D.C. 1972); *King v. United States,* 271 A.2d 556, 558–59 (D.C.1970); *United States v. Mack,* 151 U.S.App. D.C. 162, 169, 466 F.2d 333, 340, *cert. denied,* 409 U.S. 952, 93 S.Ct. 297, 34 L.Ed.2d 223 (1972). As a result, the only restitution order that is before this court is the initial order requiring the payment of $2100 to the District. However, if the trial court has indicated a willingness to modify a sentence, the prop-

er course for us is to remand the case so that the trial court can amend that order. *See Bell v. United States,* 676 A.2d 37, 41 (D.C.1996). Thus we will interpret the second order purporting to reduce the amount of restitution as simply an indication that the trial court is willing to make such a modification. *See Taylor,* 603 A.2d at 453 n. 7; *King,* 271 A.2d at 558–559. Neither the government nor Forte contends that the $2100 figure should remain unchanged. We therefore remand the case with directions to enter a new order reducing the restitution amount from $2100 to $700.

## V

The convictions of all three appellants are affirmed on the merits. Forte's case is remanded to enable the trial court to modify the restitution order.

*It is so ordered.*