Elauin L. HEBRON, Appellant,

v.

UNITED STATES, Appellee.

No. 00–CF–892.

District of Columbia Court of Appeals.

Submitted Feb. 26, 2002.
Decided July 25, 2002.

are in a basement when you are in the base-
ment." See also note 3, *supra*.

Deborah A. Persico, Washington, DC, appointed by the court, was on the brief for appellant.

Roscoe C. Howard, Jr., United States Attorney, and John R. Fisher, Elizabeth Trosman, Roger L. Kemp and Joseph W. Clark, Assistant United States Attorneys, were on the brief for appellee.

Before STEADMAN and GLICKMAN, Associate Judges, and KING, Senior Judge.

PER CURIAM:

Appellant Elauin Hebron appeals his conviction for first degree theft on the grounds that the evidence was insufficient to convict him. We must agree with appellant that, under the demanding standards of our case law relating to proof of value, the government did not present sufficient evidence regarding the value of the stolen goods such that appellant could be found guilty of first degree theft. However, we reject appellant's challenge to the sufficiency of the evidence concerning his intent to deprive the owner of the goods.

I.

The government presented evidence that appellant shared an apartment with the owner of the stolen goods, Mansoor Salahuddin, from January to March 1999.

On March 20, 1999, Salahuddin was found shot to death.[1] The next day, Salahuddin's girlfriend, Tesa Jones, entered his apartment and discovered that all of Salahuddin's belongings except his furniture had been removed. On the day after, she returned and found the entire apartment was empty. Witnesses also testified that on March 21, appellant tossed mattresses off the apartment balcony to the parking lot below and moved boxes out of the apartment building. The police subsequently executed two search warrants and recovered Salahuddin's property from appellant's girlfriend's apartment and appellant's mother's house.

II.

A.

A first degree theft conviction must be supported by proof that the stolen property had a value of $250 or more at the time of the theft. See D.C.Code § 22–3212(a) (2001). "[W]e have been very strict in requiring affirmative proof of value, especially when the value alleged is close to the line dividing one offense from another.... Because of the important difference between a misdemeanor and a felony conviction, this court has been careful to require substantial probative evidence of value at the time of the theft." Zellers v. United States, 682 A.2d 1118, 1121 (D.C. 1996) (citation and internal quotation marks omitted).[2]

Value in this context refers to the fair market value of the property. See Chappelle v. United States, 736 A.2d 212,

---

1. Appellant was charged with first degree murder and related offenses (including first degree theft) concerning Salahuddin's death, and the jury acquitted him on all charges except for theft. We, therefore, discuss only those facts relevant to the theft charge. It may well be that the prosecution's concentration on the more serious charges contributed to the relative dearth of evidence on the theft charge.

2. Precisely put, the government's burden is not to establish value in an absolute sense but rather to prove that the stolen property's value exceeded the statutory minimum.

215 (D.C.1999). Frequently, the testimony focuses on the purchase price of the stolen goods, but "purchase price is not necessarily equivalent to value." *Zellers, supra,* 682 A.2d at 1122. This court considers the following factors in evaluating purchase price testimony from owners: "whether the purchase was very recent, whether the chattel was in mint condition, and whether the chattel was subject to prompt depreciation or obsolescence." *Chappelle, supra,* 736 A.2d at 215. But regardless of whether the owner testifies or some other method is used to prove value, "[t]he government must introduce evidence of value . . . sufficient to eliminate the possibility that the jury's verdict was based on surmise or conjecture about the value of the property." *Terrell v. United States,* 721 A.2d 957, 959 (D.C.1998) (citations and internal quotation marks omitted).

█ To establish the value of the stolen goods, the government had Jones testify as to the items taken and what the purchase prices for many of them were, *i.e.,* a glass table and chairs bought two months before the theft for $189, a futon and mattress, coffee table, two end tables and a lamp bought four months before for $417, and a stereo bought eighteen months before for $189.[3] Thus, the government established that most of the stolen goods had been bought for $606 within the past four months. The question is whether the evidence concerning these goods as well as the year-and-a-half-old stereo was sufficient to prove the stolen property had a value of $250 or more at the time of the theft.

We first note that most of the purchases were quite recent because they were bought within four months before the theft. However, no evidence was adduced as to the condition of these items at the time of the theft nor were the items themselves or even photographs thereof presented to the jury.[4] *See Malloy v. United States,* 483 A.2d 678, 681 (D.C.1984) (reversing grand larceny conviction when government offered no evidence concerning condition of stolen items). Furthermore, the stereo was subject to prompt depreciation or obsolescence. *See id.* at 680 n. 2. As for the furniture, our prior case law offers little guidance on its depreciation rate. *Compare Capers v. United States,* 403 A.2d 1155, 1156 (D.C.) (jewelry), *cert. denied,* 444 U.S. 934, 100 S.Ct. 280, 62 L.Ed.2d 192 (1979); *In re J.F.T.,* 320 A.2d 322, 325 (D.C.1974) (pistol and camera) (not subject to prompt depreciation) *with Malloy, supra,* 483 A.2d at 680 n. 2 (television and radio); *Comber v. United States,* 398 A.2d 25, 26 (D.C.1979) (clothes) (subject to prompt depreciation).

In *Zellers, supra,* we were confronted with a similar problem in that we had no guidance for establishing the fair market value of compact discs (CDs). Although we noted that CDs were like pistols and cameras that did not suffer prompt depreciation, we said that "we cannot assume that the compact discs retained the value that they had at the time of their purchase." 682 A.2d at 1122. We then declined to take judicial notice as to "what may affect the value of a compact disc." *Id.* Likewise, the jury could only speculate as to the depreciation rate of the furniture.

---

3.  Jones also testified that other items such as clothes and personal effects had been taken, but no purchase price or fair market value was established for any of these items.

4.  Jones did testify that a sofa taken during the theft was in good condition, but no value was ever established for the sofa. As for the stolen goods whose purchase prices were adduced, Jones only testified that they were in the same condition when recovered that they had been when the theft occurred.

The government, therefore, has failed to prove either the condition of the stolen items or the furniture's depreciation rate. "While it might be reasonable to presume that the aggregate value of the items was in excess of $[250], the standard of proof in this jurisdiction does not permit such conjecture." *Malloy, supra,* 483 A.2d at 681. This court has previously reversed felony convictions in which the purchase price of the stolen goods was substantially higher than the statutory minimum both in absolute and percentage terms. *See Zellers, supra,* 682 A.2d at 1120–22 (purchase price exceeded statutory minimum by $1089); *Malloy, supra,* 483 A.2d at 680–81 ($775);[5] *Comber, supra,* 398 A.2d at 26 ($240–$280); *Moore v. United States,* 388 A.2d 889, 891–92 (D.C.1978) ($200–$300); *Williams v. United States,* 376 A.2d 442, 443–44 (D.C. 1977) (per curiam) ($655); *Boone v. United States,* 296 A.2d 449–50 (D.C.1972) ($212). Moreover, we have not hesitated to overturn a conviction in which the stolen property had been purchased more recently than the items in this case. *See Comber, supra,* 398 A.2d at 26 n. 1 (stolen goods bought one month before theft). "[C]onsidering that the total value of the stolen goods was a close question, we hold that the evidence was not sufficient to eliminate the possibility that the verdict was based on surmise or conjecture." *Zellers, supra,* 682 A.2d at 1122 (citations and internal quotation marks omitted). We, therefore, must reverse the conviction of first-degree theft.

**B.**

We next turn to appellant's contention that the evidence was insufficient to show an intent to deprive the owner of his property. "In considering appellant[] . . . argument[] . . . that the government failed to present sufficient evidence to establish [his] guilt, we must view the evidence in the light most favorable to the government, recognizing the factfinder's role in weighing the evidence, determining the credibility of witnesses, and drawing justifiable inferences from the evidence. The government is not required to negate every possible inference of innocence. On the contrary, appellants . . . must establish that the government presented no evidence upon which a reasonable mind could infer guilt beyond a reasonable doubt." *Bell v. United States,* 790 A.2d 523, 529 (D.C.2002) (citations and internal quotation marks omitted).

To sustain a theft conviction, the government must prove that a defendant "wrongfully obtain[ed] or use[d] the property of another with intent: (1) [t]o deprive the other of a right to the property or a benefit of the property; or (2) [t]o appropriate the property to his or her own use or to the use of a third person." D.C.Code § 22–3211(b). For purposes of this statute, " '[d]eprive' means: (A) [t]o withhold property or cause it to be withheld from a person permanently or for so extended a period or under such circumstances as to acquire a substantial portion of its value; or (B) [t]o dispose of the property, or use or deal with the property so as to make it unlikely that the owner will recover it." D.C.Code § 22–3201.

█ The government's evidence established that appellant removed Salahuddin's property from the apartment and stashed it at his girlfriend's and mother's homes. Furthermore, the goods were not recovered until the police executed two search warrants. The jury could reasonably infer from this evidence that appellant intended to deprive Salahuddin of his property by withholding it for enough time "as to acquire a substantial portion of its value" or

**5.** At the time of this and prior cases, the statutory minimum was $100.

placing it somewhere from which Salahuddin (or his estate) would be unlikely to recover it. While appellant presented contrary evidence explaining why he removed the property, the jury was free to disregard this in favor of the government's evidence. *See Bell, supra.* Thus, the evidence was adequate to support a theft conviction.

Accordingly, appellant's conviction for first-degree theft is reversed, his sentence is vacated, and his case is remanded with instructions to enter a conviction for second-degree theft and for resentencing.[6]

*Reversed and remanded.*

STEADMAN, Associate Judge, with whom Senior Judge KING joins, concurring:

As the principal author of the per curiam opinion, I must agree that to sustain the first degree theft conviction on the record before us would strain our extensive case precedents relating to proof of value and binding upon a panel of this court. *See M.A.P. v. Ryan,* 285 A.2d 310 (D.C.1971). One might wonder, however, whether the time has come to re-examine that body of case law.

As set forth in Part II(B) of the per curiam opinion addressing proof of intent, our normal standard of review for sufficiency of the evidence gives great deference to the role of the fact-finder in assessing evidence and drawing inferences. It is somewhat of a mystery to me why we have singled out the element of value and imposed what we have repeatedly referred to as a "strict rule" of proof, *Wilson v. United States,* 358 A.2d 324, 325 (D.C.1976) (per curiam), and in particular why we have so grudgingly treated the probative value of the purchase price of a stolen item.

In our cases, we do not deal with Ming dynasty ceramics or first editions of Milton's *Paradise Lost.* Rather, in the main, they involve items of furniture and other personal possessions that are undoubtedly utterly familiar to lay fact-finders. I would daresay that for most, the logical starting point for assessing the current value of such items would be the purchase price. While of course the proof should be sufficient to "eliminate the possibility that the jury's verdict was based on surmise or conjecture," *Terrell v. United States,* 721 A.2d 957, 959 (D.C.1998) (citations and internal quotation marks omitted), this important and long-established rule holds true across the entire range of the criminal law, *see, e.g., Smothers v. United States,* 403 A.2d 306, 312 (D.C.1979). I have to question whether the establishment of value in theft cases is somehow so unique as to require an additional, higher standard of proof.

For example, while it would seem reasonable to presume that four-month-old furniture was in its original condition, absent any evidence to the contrary, invocation of the normal rule that all reasonable inferences are to be drawn in favor of the government, *Jones v. United States,* 743 A.2d 1222, 1224 (D.C.2000), does not seem to be allowed in the circumstances of this case but rather affirmative proof is required of its "mint condition." Likewise, despite the fact that the property here was "virtually new," such that depreciation and obsolescence in their normal sense are not even applicable, we still seem to require that the government provide evidence as to "whether the chattel was subject to prompt depreciation or obsolescence." *Chappelle v. United States,* 736 A.2d 212, 215 (D.C.1999). Furthermore, what is

---

6. Because there is no dispute that the value of the stolen goods was greater than zero, the evidence was sufficient to sustain a second-degree theft conviction. *See Zellers, supra,* 682 A.2d at 1122 n. 11.

strikingly odd is that, in contrast to our strict rule where purchase price is offered as a determinant of value, we are quite willing to accept as sufficient the owner's own estimate of the current market value of the stolen items, hardly a demanding standard. *See, e.g., In re R D.J.*, 348 A.2d 301, 304 (D.C.1975) (per curiam).

What is to be determined is not the value of the stolen items in absolute terms—this is not a condemnation action—but simply whether their value, whatever it is, exceeds the statutory requirement. I should think that in normal circumstances, a jury of twelve individuals addressing the question of value of familiar household items could reasonably make such a judgment without all the requirements of a strict standard of proof such as we now impose. Somebody who strips an apartment bare of all the owner's furniture, clothing, and personal effects can hardly operate under the illusion that he is committing only petty theft. I have to question whether our present doctrine of proof of value could survive what the Supreme Court in another criminal context termed "the saving grace of common sense." *Bell v. United States*, 349 U.S. 81, 83, 75 S.Ct. 620, 99 L.Ed. 905 (1955).